THE STATE, THE UNITED NEW JERSEY RAILROAD AND CANAL COMPANY AND THE PENNSYLVANIA RAILROAD COMPANY, PLAINTIFFS IN ERROR, v. THE NATIONAL DOCKS AND NEW JERSEY JUNCTION CONNECTING RAILWAY COMPANY, DEFENDANT IN ERROR.

Upon the death of a commissioner to condemn lands in favor of a railway, such vacancy can be filled by force of the act of March 11th, 1891, such act being constitutional.

On error to the Supreme Court.

For the plaintiffs in error, *Joseph D. Bedle.*

I. These proceedings are strictly *inter partes.* While the purpose in the condemnation must be such as is regarded in the law—public—yet the parties are private in a well understood sense as distinguished from officials who are condemning land for municipal or like public purposes. 1 *Dill. Corp.,* § 56 (old 31); *Ten Eyck* v. *Canal Co.,* 3 *Harr.* 200, 203; *Mills Em. Dom.,* § 126; *Water Commissioners' Case,* 2 *Vroom* 73; *O'Neil Case,* 12 *Id.* 161.

II. The power of the justice became exhausted, when he appointed the original commissioners. Upon the death of Peter Henderson the proceedings abated or became defunct, and there was then no statute authorizing the appointment of another in his place.

III. While the majority of the commissioners could make a report (see 12 *Rev.* 928), yet the commission is an entirety and appointed together, in view of the relative qualities and ability of each commissioner, so as to have a suitable commission as a unit. Each commissioner does not hold a separate office.

Upon these last two points I refer to *Mills Em. Dom.,* § 231; *Wentworth* v. *Farmington,* 49 *N. H.* 119; *Palmer* v. *Conway,* 22 *Id.* 144; *Lew. Em. Dom.,* § 408, and cases cited in that paragraph; *Mitchell* v. *Holderness,* 34 *N. H.* 209.

See New York cases—*Astor* v. *Mayor*, 62 *N. Y.* 580; *People* v. *Syracuse*, 63 *Id.* 201; *People* v. *Palmer*, 52 *Id.* 83.

IV. There being no remaining life in the commission after the death of Henderson, the only course left for the company seeking to condemn was, to proceed *de novo*, for the appointment of another commission.

V. If the act entitled "An act relative to commissioners for taking land for public use," approved March 11th, 1891, has application to this private and special proceeding, then the same is unconstitutional and void as against the prosecutors, for the following reasons:

Because the legislature had no power to compel the prosecutors to accept the other two commissioners by themselves or in connection with a new appointee in place of the deceased. The act seeks, without due process of law, and without notice, to compel the prosecutors to accept and be bound by the proceedings which had been defunct more than a year preceding the approval of the act. Suppose two commissioners had died, would there have been any life in the other? Clearly not, and it is the same as to the death of one. The power of the appointment was exhausted.

Because the condemnation proceedings were special and between private parties, and could not be embraced within the provisions of the act. I remark, also, that if this act is sustained, it does not give the prosecutors an equal chance with others, under the General Railroad law.

Because the proceedings were not only special and private as aforesaid, but the act designates the same justice to fill the vacancy who made the appointment, and thereby embraces a provision of a private and special character.

Because if the act is intended to include these special proceedings, the object is not expressed in the title. The title, we insist, has reference only to the taking of land by municipal and such like public authorities, and does not apply to condemnation of lands by railroad corporations, which are essentially private as distinguished from public municipal

bodies.    Further, if the act is intended to include these special proceedings, the same then embraces more than one object.

I refer here to the two different clauses in our constitution as to taking lands.    Article I., cl. 16 : " Private property shall not be taken for public use without just compensation ; but land may be taken for public highways as heretofore, until the legislature shall direct compensation to be made." Article IV., § 7, cl. 8 : " Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."    Here are two different kinds of taking, one by individuals or private corporations, upon compensation first made ; the other, the ordinary taking for public use.    It is the former which protects the owner in taking by private person or corporation.

VI. The act has no application to the proceedings in question.    Neither the title or the body of the act shows any intention on the part of the legislature that the same should apply to proceedings for the taking of lands between a railroad company and a landowner.    These proceedings are strictly *inter partes,* and the act only applies to the taking of land by public officials or bodies.

VII. The act is not retrospective so as to include these proceedings, but if retrospective it contemplates only a death after the passage of the act.    It is not permissible to construe this act retrospectively and so as to include the death of a commissioner previous thereto, unless such construction is imperative.    All acts must be construed prospectively unless the language necessarily compels a retrospective operation.

VIII. The act does not apply to these proceedings, because a new commission could be appointed under the General Railroad law.    The death of Peter Henderson did not leave the petitioners without remedy, for other commissioners could be appointed under the same law as the original were appointed.    A vacancy can exist under the act only in the absence of law providing for the appointment of other commissioners.    No such vacancy existed in these proceedings as is intended by the act of March 11th, 1891.

IX. The appointment of another in the place of the deceased commissioner does not give the prosecutors such a commission as is provided in the General Railroad law. In condemnations by municipal bodies, if it be admitted that commissioners may be appointed in the first place, without notice, to form a tribunal, that is not the doctrine with reference to these proceedings *inter partes,* and under article IV., section 7, clause 8 of the constitution, and it should not be held that the legislature intended that the act should give less security to. the landowner than existed under the General Railroad law; hence we insist that the act must not be so construed as to include these private proceedings.

X. When Peter Henderson died the proceedings had been set aside by the Supreme Court, so that the same were not then pending in the sense contemplated by the act of March 11th, 1891.

XI. The justice had no jurisdiction to appoint the new commissioner, because neither the original proceedings or those immediately in review show that the lands sought to be condemned of the prosecutors are not necessary for the purposes of their franchises. This, we insist, is jurisdictional, and further, that the said lands are necessary for the purposes of the prosecutors' franchises, and the defendant makes no attempt to show that they are not so.

XII. The charter of the New Jersey Railroad and Transportation Company, and the subsequent legislation under which these lands in question are held by the prosecutors, create not only a contract, but an irrepealable contract, and the provisions of the General Railroad law were never intended to interfere therewith. The intention to condemn lands so held (if condemnation were lawful) should be expressed most clearly and beyond all question. The general clauses of the Railroad law cannot be construed to meet this case. It is evident that the General Railroad law was never intended to reach such a case as this.

XIII. The land sought to be condemned out and out lies between the abutments of the main passenger tracks of the

prosecutors and an abutment of the Harsimus freight tracks adjoining said abutments and within the angle formed by the two sets of tracks, and is necessary to the prosecutors for the purposes of their franchises, and the same is protected under the legislation aforesaid against any power conferred in the General Railroad law to take the same. All ordinary land, speaking generally, is subject to condemnation under the General Railroad law, but no corporation organized thereunder is authorized to take the lands of another railroad corporation " except for the purpose of crossing such lands or route of such corporation, and except the lands of such other corporations not necessary for the purposes of their franchises." It becomes, then, a question of jurisdiction whether one railroad company can take the lands of another, and, to justify it, the exceptional facts must be shown, and, as we claim, on the face of the proceedings.

XIV. The prosecutors have an *irrepealable contract to* acquire and hold the lands sought to be taken, and are in possession of the same under their franchises, and said lands are necessary for the purposes thereof, and there is no power in the legislature to authorize the defendant, another railroad corporation, to take the same, or any part thereof, either under the proceedings in question or any other.

XV. It must be remembered, in determining the validity of the act of March 11th, 1891, that the clause of the constitution which affects this case is the one in relation to individuals or private corporations, as distinguished from the general clause of taking for public use, and that the right of the owner to be protected by due process of law or notice begins at the start of the proceedings to condemn. He has a right to be heard from the beginning. The legislature could not compel him to take a commission it might select.

For the defendant in error, *Charles D. Thompson* and *Gilbert Collins.*

On the 2d day of May, 1889, an order was made appointing three commissioners in condemnation to appraise the

damages of the Pennsylvania Railroad Company and of the United New Jersey Railroad and Transportation Company from a proposed under-grade crossing of the National Docks and New Jersey Junction Connecting Railway at Point of Rocks. The commissioners were sworn and fixed a day for view, but were then stayed by a *certiorari*, which resulted, after a writ of error and a long delay, in an affirmance of the order of appointment on the 29th day of April, A. D. 1891.

Pending this litigation, Peter Henderson, one of the commissioners, died January 17th, 1890. After the stay was removed by the affirmance, an application was made to fill the vacancy, and Richard C. Washburn was appointed by order made on the 16th day of May, 1891. A second writ of *certiorari* was allowed to stay proceedings under this last order, and, after the hearing, this order was affirmed by Supreme Court, June 24th, 1891. This second writ of error was thereupon taken June 26th, 1891.

The defendants in error, the connecting railway company, maintain the validity of the appointment under the General Railroad law. They also maintain it under an act approved March 11th, 1891. Under either, and under both, the appointment is valid.

I. *The appointment to fill the vacancy is warranted by the act of 1891.*

It is argued that the act does not apply to the case of a commission appointed before its passage.

But the act expressly provides for the case of commissioners who have been as well as those who shall be appointed.

In *Prop. Morris Aqueduct* v. *Jones*, 7 *Vroom* 206, 212 (affirmed 8 *Id.* 556), the act made provision for certain notice to be given in cases where proceedings in condemnation "have been or shall be taken," and for cases where "an appeal has been or shall be taken," and the Chief Justice said, "That this act provides for notice in case of appeals which had been theretofore taken, is very clear."

In *State, Alden* v. *Newark*, 11 *Vroom* 92, 96 (citing *Corlies* v. *Little*, 2 *Gr.* 373, 384), Scudder, J., describes the words

"have been" as appropriate to give the statute a retrospective application, as distinguished from "shall be" or "shall have been."

In *McGovern* v. *Connell,* 14 *Vroom* 106, the statute reads "when any judgment is obtained." Justice Dixon said that this might mean either "has been obtained" or "shall be obtained," and the presumption against retrospection required the latter solution of the ambiguity.

The very form of speech which Justices Dixon and Scudder thus named as appropriate to give a retrospective meaning was used in the act of 1891.

If, therefore, the question is, as stated by counsel for the Pennsylvania railroad, whether the act of 1891 is retrospective, it clearly is so in the sense that it applies to the case where commissioners "have been appointed" and one of the commissioners "has died."

But in the proper sense of the term, the act of 1891 is not retrospective. Webster says, "A retrospective law is one which operates expressly to affect acts done prior to the passing of the law." Also, "An *ex post facto* law is one enacted with a retrospective effect." In legal usage, the term *ex post facto* law is limited to penal laws which are retrospective, and the term "retrospective" applies to other *ex post facto* laws. The law of 1891 is not *ex post facto* or retrospective. It does not legalize or affect acts done prior to the passing of the law. If the justice had appointed Mr. Washburn before the law was passed, and an act was passed to legalize the appointment, that would be a retrospective law.

The real inquiry under the act of 1891 is not whether it is retrospective, but whether it applies to further practice in a pending proceeding. It is a remedial act defining the practice and prescribing the next step to be taken under such circumstances as are now presented. There is no presumption of law that such a statute does not apply to a pending proceeding; the presumption is the other way: "As a rule of construction, the law is that when a new enactment deals with practice and procedure only, it applies to all actions, unless

otherwise expressed, whether commenced before or after its passage." Rowell, J., in *Murray* v. *Mattison*, 21 *Atl. Rep.* 532, citing *Wright* v. *Hale*, 6 *Hurlst. & N.* 227, 232; *Kimbray* v. *Draper*, *L. R.*, 3 *Q. B.* 160, 162.

The proceeding for taking land for a railroad involves:

*First.* The filing of articles of association.

*Second.* The filing of a survey of the route.

*Third.* The petition for appointment of commissioners and notice thereof.

*Fourth.* The order appointing commissioners.

*Fifth.* The oath of the commissioners.

After these steps had been taken, one of the commissioners died. Nothing has been done in the past except that for which there was law.

Now, what is our next step?

It is undoubtedly a mere question of procedure. We look at the procedure established by the law to-day and find our course prescribed by this act of 1891, which authorizes for the future (not ratifies for the past) just such an application as we are making. Our adversary says we should apply for a new appointment of three commissioners. In the absence of the act of 1891, we must either have done so, or have gone on with the two survivors, or have applied to fill the vacancy under the implied power conferred by the General Railroad laws.

But had we adopted either practice suggested, we must have shown to the court the death of Mr. Henderson, and have applied in the same proceeding already pending. But here comes in a new statute and prescribes a new practice in that situation of affairs. It simply changes the practice, and even if it had not been expressly applicable to pending condemnation proceedings, it would be applied to them, not by retroaction, but as legislation. prescribing the form of procedure.

The manner of procedure may be changed after the action arises, at the pleasure of the legislature. *Lew. Em. Dom.,*

§ 245; *United Railroad and Canal Co.* v. *Weldon*, 47 *N. J. L.* 59.

In *Van Valkenburgh* v. *Rahway Bank*, 3 *Zab.* 583, 589, the Court of Errors and Appeals affirmed the ruling of Chief Justice Green, who admitted a witness made competent by statute passed pending the suit, though the act did not provide that it should apply to pending suits, and a like ruling was made in *Besson* v. *Cox*, 8 *Stew. Eq.* 87. In *Baldwin* v. *Newark*, 9 *Vroom* 158, 160, a set-off was ordered by statute between past awards and assessments for street improvements, and was held valid as a change of remedy. Indeed, the principle we contend for has legislative sanction (*Rev.*, *p.* 1121, § 3) in the provision that changes in the law will not affect any right or proceeding in a civil cause, except that where the procedure shall be changed, "actions then pending or thereafter commenced shall be conducted as near as may be in accordance with such altered practice or procedure."

It is further urged against the appointment that the act of 1891 applies only to the taking of land by municipal corporations, because it operates only on the "taking for public use." The language used in the act is that of the constitution, as well where land is taken by an individual or private corporation, as where the direct representatives of the public take. The constitutional provisions are:

Article I., ¶ 16: "Private property shall not be taken for public use without just compensation."

Article IV., § 7, ¶ 8: "Individuals or private corporations shall not be authorized to take private property for public use without just compensation first made to the owners."

The only sanction for taking private property at all is public use. The taking for a railroad is pre-eminently such a use.

The claim that only municipal condemnation of land is meant because it appears by the title that commissioners are to take the land, and the contention that the title is limited to cases where commissioners take, are alike frivolous.

The title includes every sort of taking where commissioners are involved, and fully and very appropriately covers the whole object of the law.

Commissioners never take land, but if there are cases in which it might be said that they take, this title includes such commissioners, as well as every case in which commissioners are concerned in the taking of lands.

Suppose the title read : "An act relative to surveyors for the taking of land for public use," would any one contend that it meant a case where the surveyors took the land ?.

A variety of expressions will suggest themselves to the mind, which might very properly be used in the same manner in which the expression in the title of this act was used.

" Descriptions or surveys for the taking of land for public use."

" Notices for the taking of land for public use," &c.

The plain meaning of the phrase is, commissioners necessary to the taking, however they may act. Counsel himself conceded that the title, as he phrased it, might be " whipped into shape by the court." If so, what can be objected against it. The court has a right to look at the body of the act to interpret the title. *State, Gibbs, pros.,* v. *Northampton Township,* 23 *Vroom 496.*

II. *Rights to be taken by the condemnation.*

All questions as to the rights proposed to be acquired were susceptible of presentation before the Supreme Court and the Court of Errors and Appeals on the former writ of *certiorari,* and, therefore, are concluded by their judgment. *Town of Belvidere* v. *Warren R. R. Co.,* 5 *Vroom* 197.

The mere fact that the opinion did not touch upon all of the points raised by counsel does not impair or narrow the effect of the judgment. The losing counsel always thinks that the court has overlooked his best point.

As a matter of fact, they were fully presented. It was argued for the prosecutor that the petition should define the estate to be taken, and in reply it was argued for the connecting company, and was, no doubt, the view of the court that

it is not essential that one railroad company, in condemning a crossing of the railroad of another company, should expressly declare in the petition that a right of crossing only will be taken; it is enough that the land is described; the estate to be acquired is not a matter of choice with the condemning party, but will be defined by law. *De Camp* v. *Hibernia Mine R. R. Co.*, 18 *Vroom* 43, 53; *State, National R. R. Co.*, v. *E. & A. R. R. Co.*, 7 *Id.* 181, 187.

The petition has been adjudged sufficient and can no longer be questioned.

III. *The appointment is valid under the General Railroad laws.*

The prosecutor bases his whole argument on the theory that the death of one commissioner completely annuls the original appointment. If such were the case, it affords no reason why the legislature should not provide for a revival of the powers of the survivors to act with a third member. Why not? What principle is violated, or what right of the prosecutor invaded?

But was it the case that before the act of 1891 the death of Mr. Henderson annulled the appointment of the others? We think not. The rule in such case is laid down in *People* v. *Palmer*, 52 *N. Y.* 80, 87, as follows: "A grant of power in the nature of a public office to several, does not become void upon the death or disability of one or more. Such a grant of power is not in the nature of a private franchise. The policy of the law is to guard against the failure of a public service." In *People* v. *Mayor of Syracuse*, 63 *N. Y.* 291, 297, three commissioners were appointed to make awards and assessments for a street improvement, and one of them died before the assessment was made. The court held "that a power conferred upon three or more persons for a public purpose is not extinguished by the death of one where no provision exists exists for filling the vacancy, but vests in the survivors."

See, also, *George* v. *School District*, 6 *Metc. (Mass.)* 497, 511, and remarks of Chief Justice Hornblower in *Smith* v. *Trenton Delaware Falls Co.*, 2 *Harr.* 8.

The result is that the act of 1891 adds a member to an existing commission. Since, by that act, such power to fill a vacancy now exists, the powers of the commissioners are suspended until the vacancy is filled, as in *People* v. *Nostrand,* 46 *N. Y.* 375, 383, distinguished in the other two New York cases above cited. These New York cases are cited with approval in 1 *Dill. Muni. Corp.* 159, *n.* 1.

Furthermore, we contend that the appointment of Mr. Washburn was authorized by the General Railroad law by fair implication. The order does not depend on the act of 1891 alone. If there is authority to fill a vacancy under the General Railroad law, the order of appointment now in question is sustained by it. We think such authority is implied.

In the present case the decease of Mr. Henderson took place before any action had been taken by the commissioners.

"Where the proceedings are under the supervision of a court which appoints the tribunal to condemn, it would seem proper that if vacancies occur before the tribunal proceeds to act, it should proceed to fill such vacancies." *Lew. Em. Dom.,* § 403.

The appointment is valid whether sanctioned or not by the act of 1891. The statute under which the commissioners were first appointed requires the justice to appoint three commissioners to "examine and appraise the land and assess the damages." This implies the naming of men able to examine, appraise and assess, and if any one ceases to be a commissioner from any cause, such as death or disability, then the justice has not fully complied with the statute. The fair implication of the statute is that commissioners shall be named who can render the public service required, and that the duty of the justice has not been discharged until he has provided such commissioners.

The order brought up should be affirmed.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This controversy arises out of this state of facts. On the 2d day of May, 1889, an order was

made by a justice of the Supreme Court appointing three commissioners in condemnation proceedings to appraise the damages of the Pennsylvania Railroad Company from a proposed under-grade crossing of its road by the defendant in error. These three commissioners were chosen on a day and at a place, of which the parties in interest had due notice according to the statute.  These commissioners were sworn and had fixed a day on which to view the premises when they were stayed by a *certiorari*, the object of which was to review the appointment, and the result of that course of law was an affirmance of it.  Pending this litigation, which was somewhat protracted, one of the commissioners died, whose place was supplied on application made to the same justice who had made the original order.  This supplementary order was dated May 16th, 1891.

It is this latter order which is in contestation before this court.

The appointment thus challenged was made in pursuance of an act of the legislature, approved March 11th, 1891, which is in the following words, viz. :

An act relative to commissioners for taking lands for public use.

1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That in all cases where commissioners *have been or shall be appointed* pursuant to any law of this state, to appraise the value and damages for the taking of lands for public use, if it shall appear that any one or more of the said commissioners has died pending the proceedings, or is disqualified, or is unable to act, or has failed or refused to act and perform the duties of the appointment, and there is no law providing for the appointment of other commissioners in such cases, a vacancy shall be deemed to exist, and it shall be the duty of the justice, or other authority appointing said commissioners, to fill the vacancy, on such notice as such justice or other appointing power shall direct, and when the vacancy shall be filled the commissioners shall

proceed to perform the duties of their appointment with the same powers as if all the commissioners had been appointed under the original order of appointment.

2. And be it enacted, That this act shall take effect imme- diately.

The first objection to the procedure under consideration urged by the counsel of the plaintiffs in error is, that the second appointment above described was not warranted by the act thus recited.

In the first place, it is said that the present proceeding is one *inter partes* and between private corporations, and that by the title of this statute its operation is confined to the juncture when land is to be condemned for the purposes of public corporations.

But this view will not square either with the language of the title of the law nor with the intent exhibited in its provisions. The title declares in the clearest possible terms that it relates "to commissioners for taking lands for public use," and most certainly it will not be denied that these commissioners fall literally within such description. They have been appointed at the instance of a private corporation, but the land and right to be condemned are for a "public use;" for otherwise they would not be liable to condemnation in any possible mode of procedure.

Nor has it been perceived that there is even the faintest expression or indication in this statute that it was the legislative purpose to restrict its operations to these instances in which a public corporation stood upon the record as the applicant. The statute is remedial; the mischief was the expense and vexation that sometimes ensued from the death of a commissioner before the fulfillment of his function, and this was a mischief that was as likely to afflict a private as a public applicant; the statutory words are general, and, consequently, the remedy must be deemed to have been meant to be coextensive with the mischief.

With regard to the remaining exception, that upon the death of one of these commissioners the proceedings abated and that they could not be revived by the legislature against the plaintiff in error, these subjects have been considered, but their legal force has not been disclosed.    We cannot hold that this statute of 1891 is not retrospective, unless we shut our eyes to its language; nor can we hold that a retrospective law of this character cannot be legally enacted, unless we shut our eyes to all known decisions upon the subject.    It will be observed that it is not claimed that the plaintiff in error, by reason of this supplementary legislation, has been deprived of any vested right or of any legal remedy that antecedently existed.    What is claimed is, that the right to protract the proceeding and vex his adversary should not be taken away. The three commissioners now in office have been appointed by a judicial officer upon notice and hearing; the plaintiff in error has had the opportunity of canvassing the fitness of each for the function assigned to him.    Such a board, so constituted, must be deemed to be above objection, and, in the opinion of this court, it has been legally constituted.

Let the judgment be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, MAGIE, VAN SYCKEL, BOGERT, BROWN, CLEMENT, KRUEGER, SMITH.    9.

*For reversal*—None.