THOMAS H. ABBOTT. v. AUGUSTUS GREGORY, FRANCIS W.
FIFIELD, AND CATHARINE A. ABBOTT.

*Equitable jurisdiction—Party complainant—Deed by way of secur-
ity—Possession.*

The objection that a bill of complaint did not allege that the dis-
puted property was worth $100, and that the court therefore
had no jurisdiction, was considered met where it did allege
that the complainant claimed to own it in fee simple, described

it as consisting of 360 acres, and stated that defendant had deeded it for the expressed consideration of $15,000.

Where one claims that he deeded land in trust to be conveyed as a gift to a person named, and that his grantee deeded it to another, he is a proper complainant to insist that his grantee execute the trust.

Mere possession after deeding land is not of necessity notice that the grantor still claims rights in the premises inconsistent with those conveyed.

A deed may be properly taken as security when the amount to be secured is uncertain and depends on future advances.

Appeal from Van Buren. Submitted June 6. Decided June 18.

BILL TO SET ASIDE DEED AND COMPEL CONVEYANCE. Complainant, and defendant Catherine A. Abbott appeal.

*Barbour & Rexford* and *F. A. Baker* for appellants. Possession of land is sufficient notice of the occupant's rights (*Godfroy v. Disbrow*, Walk. Ch., 260; *Rood v. Chapin*, id., 79; *Disbrow v. Jones*, Har. Ch., 48; *McKee v. Wilcox*, 11 Mich., 358; *Woodward v. Clark*, 15 Mich., 104; *Hubbard v. Smith*, 2 Mich., 207) even as against his deed, when there are slight circumstances to put one on inquiry, *Bennett v. Robinson*, 27 Mich., 26; when a defendant has no rights in disputed property as against complainant, he is not in position to object to the granting of relief that will not affect his rights, *Birdsong v. Birdsong*, 2 Head, 290.

*A. C. Baldwin* for defendant Fifield.

MARSTON, J. There are some legal objections set up to the relief sought for in this case which will first be noticed.

*First*, that the court had no jurisdiction, because it was not alleged in the bill of complaint that the property in dispute was of the value of over $100.

It does appear in the bill of complaint that the complainant claimed to be the owner in fee simple of the premises, consisting of three hundred and sixty acres,

and that since his conveyance to defendant Gregory the latter had conveyed them to Fifield; and that the consideration as expressed in the deed was $15,000. We are of opinion that enough appears to clearly give the court jurisdiction. *Church v. Ide*, Clarke's Ch. (N. Y.), 494.

*Second.* That the action is improperly brought in the name of complainant. In support of this it was urged on the argument that complainant by his own showing had parted with all his legal and equitable interest in the land to Gregory upon an oral trust that the latter should hold it for Catherine Abbott, the infant daughter of complainant, and that Catherine was the proper person, if any one, to commence proceedings.

We are of opinion that the position taken by complainant's solicitor is correct. Complainant being of intemperate habits, was desirous of conveying this property to his infant daughter so as to place it out of his reach and prevent its being squandered. He was informed that to do so he must convey to a third person and not directly to his daughter. With this object in view he conveyed to defendant Gregory who he claims was to convey to Catherine Abbott, and that Gregory refuses to convey to Catherine, and has made a conveyance of the property to defendant Fifield. There being no binding agreement between complainant and his daughter under which she could have compelled a conveyance of this property, it being a free gift to her by her father, and the conveyance made to Gregory being for the sole purpose of enabling the latter to convey to Catherine, so that a perfect title might vest in her to the property, we are of opinion, upon complainant's theory, that he remained sufficiently interested in the transaction to enable him to come into court and insist upon the conveyance being made by Gregory in accordance with the agreement, if such an one was made, in order to prevent a frustration of the only object which he had in view in making the conveyance to Gregory. We do not say that Catherine as against Gregory might

not have filed a bill for the same purpose, but we see nothing in this case that would prevent her father coming into court as a complainant and insisting upon a performance of the agreement entered into between him and Gregory. The mere fact that performance thereof would enure more particularly and directly to the benefit of another would be no good reason why the party making such agreement could not insist upon its performance. Otherwise the entire consideration as to him might fail, and unless the person for whose direct benefit the conveyance to Gregory was made, would move in the matter, he would be remediless.

We will now consider the facts in this case.

On the 21st day of April, 1875, Gregory by warranty deed conveyed the premises to defendant Fifield. The bill charges that this conveyance was made without consideration and with intent to cheat and defraud complainant and his daughter Catherine, and the bill prays that this conveyance may be decreed of no effect and null and void; that defendant Gregory may be decreed to execute to defendant Catherine a deed of the lands in accordance with the trust reposed in him, and if this relief cannot be granted, that the deed to Gregory may be declared null and void, and for general relief.

Fifield in his answer admits the conveyance to him. He sets up that during the season of 1875 complainant and defendant Gregory were partners doing a general commission business; that he at various times furnished the firm with flour, feed and money; that he wanted security for the advancements then made and afterwards to be made; that for the purpose of securing said indebtedness and any flour, feed or money, afterwards advanced, defendant Gregory executed the deed in question; that said deed was made in good faith, and for the sole purpose of securing and protecting him (Fifield) for any and all indebtedness incurred and to be incurred between him and said firm. And that he caused this deed on the 28th of April, 1875, to be

recorded in the record of deeds and also in the record of mortgages of the proper county. He denies that he had any knowledge of the fact that Gregory held these lands in trust, and he offers to release or convey upon payment of the amount due him.

Defendant Gregory in his answer claims that the deed to him was made to enable him to secure persons who should make advances to the firm, and substantially sets up the same facts in reference to the conveyance to Fifield as stated in the answer of the latter.

I am satisfied from the evidence in this case that previous to and at the time the conveyance was made to Gregory, there was not and had not been any agreement or understanding between Abbott and Gregory, that the latter should take and hold this property for the purpose of securing the firm creditors. Gregory's testimony standing alone establishes this fact.

On the other hand I am not satisfied that the conveyance was made in pursuance of an agreement or understanding that Gregory should hold the property in trust for or convey the same to Catherine Abbott, complainant's daughter.

The complainant testifies that he conveyed the premises to Gregory in trust for his child, and that Gregory was to deed to her, and that he thought all the time Gregory had done so, until some time in September or October, 1875, when he first learned that Gregory had conveyed to Fifield to protect the property against certain claims against Gregory, and that Fifield, Gregory said, would convey to Catherine as first agreed upon.

Mrs. Abbott also testifies that the conveyance to Gregory was for Catherine's benefit, but her evidence is far from being clear or distinct upon this point. Indeed her testimony standing alone would and does convey the impression, at least to my mind, that the conveyance was made to protect the property and to prevent complainant from recklessly disposing of and squandering it.

The letters written by Mrs. Abbott shortly after the

conveyance to Gregory certainly are inconsistent with the theory of a conveyance to him in trust for the benefit of her daughter.

These letters show that there was no love or affection, and nothing but the most bitter feelings existing between Mr. and Mrs. Abbott, and give very strong support to the testimony of Gregory that complainant had repeatedly refused to convey the premises to either Mrs. Abbott or her daughter, for the reason that the property would then be placed beyond his reach or control; that they did not care for him and would kick him into the street.

The conveyance was made January 13, 1875, and the letters referred to were written in March and June following. Mrs. Abbott in her testimony says that after the conveyance she repeatedly spoke to Gregory about conveying to the child, and that the only reason he gave for not doing so was his hurry of business. She says it ran along so until February when complainant and witness were going to leave the city, when she saw Gregory and told him she could not leave until she knew he had fixed the place; that he might die in the meantime and if he didn't fix it they would lose it; that he then made an appointment with Mrs. Abbott to meet her at a certain time and place, apparently to make the conveyance, but that he did not keep the appointment, and that she did not see him again until June, when he told her he had conveyed to Fifield.

In none of the letters which were written by Mrs. Abbott to Gregory, does she mention or even intimate that the property was held by Gregory for her daughter's benefit, or that Gregory had not conveyed as he had agreed to do, or that he was violating his agreement in any way.

The first letter is dated March 6th, and in it she advises Gregory to sell every dollar's worth of personal property complainant owns to some person he (Gregory) can trust, reminding him that he had power so to do.

She wrote him to do so at once, to make it a legal sale, even to passing money, as surely there was some one he could trust. The power she here refers to was doubtless a power of attorney hereafter mentioned.

In the letter of March 10th she speaks of the difficulties she was having on account of complainant's intoxication and his selling personal property from off the farm. She says she will advise a sale of this farm if she finds complainant cannot manage it, and speaks of a debt that will have to be paid, even if Gregory should have to mortgage the farm to pay it, but she hopes it will not be necessary to sell. There are also expressions in the letter of June 23d, which need not be here repeated, inconsistent with the idea of a trust, but consistent with a conveyance to Gregory as a protection against complainant's folly and recklessness.

There are also certain admissions claimed to have been made by Gregory that he held the property in trust. These admissions are denied by him, and are at best entitled to but little weight. If however there were doubts as to the correctness of the views expressed upon this branch of the case, yet complainant could not obtain the full relief prayed for.

The fact that Fifield was a creditor of the firm of Abbott & Gregory, and that a balance of account exists in his favor does not seem to be seriously disputed. The evidence as to the condition of the account is not as full, clear, and satisfactory as we could have wished. If complainant was satisfied to let the case stand, in this respect, upon the showing made by Fifield, we cannot in the absence of all testimony, and upon mere suspicion that a more thorough investigation would have reduced the amount of his claim, find that the amount which he testified to is not correct.

Fifield claims to have received the conveyance in good faith as a security for the amount of his account against the firm of Abbott & Gregory, and this is disputed.

The testimony introduced on the part of the defendants

tends strongly to support Fifield's view of the case. Fifield denies that he had knowledge that Gregory held the premises in trust. He was shown the deed to Gregory, an abstract of the property and a power of attorney from complainant and wife to Gregory, authorizing the latter to sell and convey the real and personal property of complainant.

It appears from the testimony of complainant and wife that they first learned of the conveyance to Fifield in June, but did not then learn that Fifield made any claim against the property or claimed any interest therein. Things remained in this shape until January, 1876, when Gregory and Fifield went to see complainant, where he resided upon the farm. The parties then had a conversation in reference to this matter, and as complainant and wife substantially agree in their testimony as to what was then said, and the most important part of the defense depends upon the correctness and reliability of their testimony as to what then took place, I cannot do better than give that part of the conversation, in complainant's own words. When requested to state the conversation, he testified, "he (Gregory) said that Mr. Fifield was one of our heaviest creditors and he held the deeds of the farm. Then I spoke to him about the farm, spoke to Mr. Fifield about the farm, and he spoke up and said 'I know how the farm was deeded to Augustus Gregory, but we must have the same story to tell, and of course, he said, my claim must be made good.' I then asked him how much his claim was: he said something over $4,000. He said we must all have the same story to tell, and then he spoke about exchanging a piece of land he had out at Pontiac, for the farm."

The importance of this conversation to complainant's case is to show that Fifield at the time he took the conveyance knew that Gregory held the property in trust. The parties present and taking part in that conversation

were all interested, and are equally divided in their recollections, in numbers at least, as what took place. As already stated complainant and wife substantially agree in their version, while Gregory and Fifield deny that Fifield admitted having had notice that Gregory held the property in trust or that anything was said impeaching or questioning the *bona fides* of Fifield's security. What then are the probabilities? All agree that the amount of Fifield's claim was then spoken of as being about $4000, and that he claimed security upon the property under the conveyance from Gregory for the amount of his claim. Under such circumstances it seems incredible that Fifield should admit his security to be absolutely worthless, as such is the effect of his admission 'if made. If he knew at the time he took the conveyance as security, that Gregory held the property in trust for Catherine Abbott, his security was of no value. And if such was the case at that time, it was at least very questionable whether those present at that date could make it valid and effectual. Complainant and wife did not at this time, as might have been reasonably expected, if Gregory had conveyed to Fifield in violation of the trust and confidence reposed in him, repudiate the conveyance, or deny that Fifield had any security upon this property, or could have for the amount of his claim. On the contrary they recognized the claim made by Fifield. Complainant said that the interest on $4000 would be more than he could make on the farm; that he could not pay it: they talked of exchanging this farm with Fifield for a smaller one that he owned in Oakland county, and considered the proposition Fifield made them in reference to such exchange for some short time afterwards, but owing to some additional information afterwards obtained, abandoned it.

Fifield remained at their house all night, not as one who was attempting to defraud them or their daughter,

but as one friendly to their interests, and was taken by complainant on the following morning to the depot at Decatur.

It was said that after arriving in Decatur Fifield and complainant had a conversation in a store at that place; that Atkins, a man in complainant's employ, who drove them over to Decatur, heard a portion of this conversation, and he testified that "as I came in (to the store) he (Abbott) asked Mr. Fifield this question: they were talking about the farm, and about trading farms, and he asked him if he didn't—if he knew this to be a deed of trust for him to hold this property for his daughter, and he said he did, before he took the mortgage, if I understood it right; he had a mortgage it seems—the way they talked—on the property; that Mr. Gregory had told him all about it."

This conversation Fifield denies. There is one rather singular circumstance in reference to this conversation. If the evidence of complainant and wife, as to what took place and was said at their house the evening previous, is correct, there was no necessity whatever for complainant asking Fifield this question, as they claim the whole matter had been gone over at their house, and knowledge admitted by Fifield.

It is said, however, that complainant was in possession of the farm, and that this was sufficient notice of the rights claimed by him. We think otherwise. He had conveyed the premises by warranty deed but a few months previous to the time of the conveyance to Fifield, and his possession under such circumstances would not be an indication that he claimed any rights inconsistent with the conveyance he had made.

It was also said that Fifield upon obtaining this deed caused it to be recorded in the record of deeds and mortgages; in connection with this the fact that he took a deed and not a mortgage, and that at that time he had not seen the lands are all suspicious facts and tend to show that he was not acting in good faith.

These facts might under certain circumstances be considered suspicious and yet they are under others, consistent with perfect honesty and good faith. If, as claimed, the amount to be secured was uncertain and depended upon the advances thereafter to be made, and for that reason a deed was taken as affording better security as was supposed than a mortgage, there was nothing wrong in it. The fact that he at once caused the deed to be recorded in the record of mortgages shows that Fifield considered it as but a security. Had it been so recorded after this difficulty arose, it might indicate that the question of security had not sooner been thought of. There was sufficient upon the back of the deed to Gregory both in reference to the quantity of land and the consideration expressed for the conveyance, when taken in connection with the location of the land and the information given by Gregory, to satisfy Fifield that it would be sufficient security for the amount of the advances contemplated, and the fact that he so considered it without farther examination would not throw doubt upon his good faith. All these facts when taken together we think are not sufficient to justify us in finding that Mr. Fifield was acting in bad faith.

It but remains to consider what decree should be rendered under the facts in this case. As between these parties I can see no objections to the property being conveyed to Catherine Abbott, when so prayed by complainant, subject to the lien of Fifield.

The amount claimed by Fifield as nearly and definitely as we can ascertain the same from the record was, January, 1876, $4927.30. For this amount Fifield testified he had the due-bill of Abbott & Gregory, payable with interest at ten per cent.

The bill in this case may be treated, on behalf of Catherine Abbott, as one to redeem the property from the claim of Fifield, and a decree may be rendered giving her six months to pay Fifield the amount of his claim, and that upon payment thereof he convey the

premises to her. In default of such payment then that the premises be sold, as on a mortgage foreclosure, and from the proceeds thereof, after deducting the costs and expenses of such sale, to pay Fifield the amount his due, and the balance to be paid over to the said Catherine.

The decree of the court below will be reversed, and a decree rendered in accordance with this opinion, appellees to recover costs in the court below, and appellants to recover costs in this court.

The other Justices concurred.