18 N.J. Super. 578 (1952)
87 A.2d 565
FIDELITY UNION TRUST COMPANY, A CORPORATION ORGANIZED UNDER THE LAWS OF THE STATE OF NEW JERSEY, ET AL., PLAINTIFFS,
v.
ESTHER K. PRICE, ET ALS., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided March 7, 1952.
*583 Mr. Irving Riker for the plaintiffs (Messrs. Riker, Emery & Danzig, attorneys; Mr. William G. Wood, of counsel).
Mr. Borden D. Whiting for the defendants Esther K. Price and The Orange Orphan Society (Messrs. Whiting, Moore & Phillips, attorneys; Mr. Ira C. Moore, Jr., of counsel).
Mr. Harry V. Osborne for the defendant The Board of Social Service of the Diocese of Newark (Messrs. Osborne, Cornish & Scheck, attorneys).
*584 Mr. Fredrick J. Waltzinger for the defendant Edith H. Ross Trowbridge.
Mr. Howard Isherwood, Jr., for the defendants Miriam Y. Isherwood et al.
Mr. Andrew J. Steelman for the defendant The Trustees of Rutgers College in New Jersey (Messrs. Lindabury, Steelman & Lafferty, attorneys).
Mr. Walter R. Carroll for the Camden Trust Company, amicus curiae (Messrs. Carroll, Taylor & Bischoff, attorneys).
FREUND, J.S.C.
The plaintiff brought this action under the Declaratory Judgments Act, N.J.S. 2A:16-50 et seq., for a judicial determination of the effect of the recent so-called "Prudent Man" Investment Statute, L. 1951, c. 47, N.J.S. 3A:15-18 et seq., upon certain trusts under its administration. It asserts that it is willing to invest under the authority of the statute, but doubts have arisen as to its validity respecting trusts created prior to its effective date. Instructions are sought in four specific trust estates. All beneficiaries therein have been joined as defendants; some have filed answers, joining issue on the questions raised. The Attorney-General of the State of New Jersey has been joined because the constitutionality of the statute is drawn into question. The Camden Trust Company, a corporate fiduciary which manages a large number of trust estates, filed a petition and has been admitted to this action as amicus curiae.
This is an appropriate proceeding under the Declaratory Judgments Act. Justiciable controversies for the settlement of and relief from uncertainty and insecurity with respect to rights of the fiduciaries and cestuis under the respective instruments are presented. New Jersey Bankers Ass'n. v. Van Riper, 1 N.J. 193 (1948); New Jersey Turnpike Authority v. Parsons, 3 N.J. 235 (1949); Abelson's, *585 Inc., v. N.J. State Board of Optometrists, 5 N.J. 412 (1950).
The introductory statement of chapter 47, Laws of 1951, entitled "An Act concerning investments by fiduciaries," declares: "The purpose of this bill is to permit fiduciaries to invest up to 40% of a trust estate in investments other than legal investments, except in cases in which a trust instrument otherwise provides." These are referred to as "limited legal investments" and include "all investments which are not legal investments." N.J.S. 3A:15-18(f).
The standard of care to be exercised by a fiduciary is prescribed thus:
"In investing and reinvesting money and property of a trust estate and in acquiring, retaining, selling, exchanging and managing investments, a fiduciary shall exercise care and judgment under the circumstances then prevailing, which persons of ordinary prudence and reasonable discretion exercise in the management of their own affairs, considering the probable income as well as the probable safety of their capital." N.J.S. 3A:15-19.
Subject to the foregoing standard,
"* * * a fiduciary may invest in any investments whatsoever; but no fiduciary shall make any investment for a trust estate in any limited legal investment if, on the valuation date, the aggregate value of all limited legal investments held in such trust estate exceeds, or if the investing in such limited legal investment would cause such aggregate value to exceed, 40% of the aggregate value of all the property which constitutes the principal of such trust estate." N.J.S. 3A:15-20.
Provisions for determining values are set forth in N.J.S. 3A:15-21.
N.J.S. 3A:15-25 prescribes, however, that the trust instrument shall control notwithstanding the Act.
It is provided by N.J.S. 3A:15-29 that
"This article shall apply to and govern trust estates heretofore and hereafter created, fiduciaries heretofore and hereafter appointed, and trust instruments heretofore and hereafter made."
*586 The standard of care imposed by the statute, N.J.S. 3A:15-19, was first enunciated as a principle of law by the Supreme Judicial Court of Massachusetts in Harvard College v. Amory, 9 Pick. 446 (1830). Mr. Justice Putnam said:
"All that can be required of a trustee to invest, is that he shall conduct himself faithfully and exercise a sound discretion. He is to observe how men of prudence, discretion and intelligence manage their own affairs, not in regard to speculation, but in regard to the permanent disposition of their funds, considering the probable income, as well as the probable safety of the capital to be invested."
This rule has been adopted by decisions in the following states: Maryland, Gray v. Lynch, 8 Gill. 403, 430 (1849); Missouri, Rand v. McKittrick, 346 Mo. 466, 142 S.W.2d 29 (1940); North Carolina, Sheets v. J.G. Flynt Tobacco Co., 195 N.C. 149, 141 S.E. 355 (1928); Rhode Island, Peckham v. Newton, 15 R.I. 321, 4 A. 758 (1886); Vermont, Barney v. Parson's Guardian, 54 Vt. 623 (1882); Virginia, see 34 Va. L. Rev. 102.
However, in New York the rule was laid down in King v. Talbot, 40 N.Y. 76 (Ct. App. 1869), wherein Judge Woodruff said:
"In their private affairs, they (fiduciaries) do, and they lawfully may, put their principal funds at hazard; in the affairs of a trust they may not. The very nature of their relation to it forbids it."
The Legislature of New York enacted statutes which regulated investments of fiduciaries by setting up lists of legal securities. The majority of states, New Jersey among them, followed this principle and adopted legal lists. Bogert, Trusts and Trustees, sec. 614 et seq., page 180; 2 Scott on Trusts, sec. 227.13, page 1224.
In our State, the subject of investment of trust funds was considered as early as 1831, in Gray v. Fox, 1 N.J. Eq. 259 (Ch. 1831). Chancellor Vroom said:
"Stocks are liable to great depression. The abundance or scarcity of the circulating medium in a community, and the prospects of *587 peace or war, to say nothing of the agitations caused by the spirit of restless and unprincipled speculation, are constantly causing a fluctuation in the stocks. * * * The stock of private companies is not considered safe, and investments in that species of stock would scarcely be encouraged by a court of equity."
In the 30 years preceding this opinion, there had been six depressions, and in the ensuing 120 years there have been at least 17 periods of financial distress of varying duration and severity, which economists distinguish as panics, crises or depressions. In the light of such experience, the Chancellor's observations were not only sagacious, but almost prophetic; they are as relevant and timely today as they were then, notwithstanding the safeguards of governmental agencies and the stability that may ensue from investments in common stocks by large financial institutions and mutual funds.
The first definitive statute in New Jersey governing fiduciary investments was enacted in 1865, L. 1865, page 737. It empowered a fiduciary to invest in bonds of the State. Thereafter, from time to time, the Legislature broadened the field of investments to be made by a fiduciary. In the 1937 revision of the statutes, all previous acts pertaining to investments were consolidated. A list of "legals" in which a fiduciary may invest without special order of the court appears in N.J.S. 3A:15-1 et seq.
In an appropriate case, the court may authorize trustees to deviate from the statutory list, N.J.S. 3A:15-1, subd. v, N.J.S. 3A:15-15. This power was inherent in the Court of Chancery and is now vested in the Superior Court. First National Bank of Jersey City v. Stevens, 9 N.J. Super. 324 (Ch. Div. 1950). It is interesting to note that N.J.S. 3A:15-15, subd. b, provides that
"* * * the court shall not authorize or direct the purchase of any class of common or preferred stock of any corporation unless the corporation shall have been organized and engaged in the conduct of its business for five calendar years immediately preceding the purchase of the stock of the corporation."
*588 No such qualification is stipulated in connection with the purchase of stocks under the article pertaining to "limited legal investments," N.J.S. 3A:15-18 et seq. As to the validity of this restriction upon the inherent power of the court, no opinion is expressed, since it is irrelevant here; the distinction is merely pointed out.
In the absence of directions in the trust instrument or order of the court having jurisdiction, investment in the legal list was mandatory. Reinhardt v. National State Bank, 130 N.J. Eq. 34 (Ch. 1941); The Pennsylvania Company, &c., v. Gillmore, 142 N.J. Eq. 27 (Ch. 1948).
In 1942, Mayo A. Shattuck, a leading exponent of the prudent man rule, on behalf of the American Bankers Association, Trust Division, drafted a model statute following the prudent man rule. He confessed it was "an outrageous but intentional bit of plagiarism" from the text of the opinion in Harvard College v. Amory, supra, in order "to bring to those jurisdictions which would adopt it, the considerable mass of thoughtful case law which had developed in Massachusetts since 1830. * * *" New Jersey Banker, vol. XXI, No. 2, Dec. 1950, page 7. "Massachusetts Prudent Man in Trust Investment," 25 Boston U.L. Rev. 307 (1945). The model statute permits unlimited investment of trust funds in securities of the trustee's own choice subject to the standard of care, and has been adopted in many states. 82 Trusts and Estates 23.
The New Jersey prudent man statute enlarged the investment field of a fiduciary. It empowers, but does not require, him to invest trust funds in non-legal securities denominated "limited legal investments," but not in excess of 40 per cent of the trust estate and prescribes the care, judgment and caution to be exercised in such investments. As a result of the enactment, there has been engrafted upon the presently existing list of legals, N.J.S. 3A:15-1, the Massachusetts prudent man doctrine with respect to "limited legal investments" subject to the percentage limitation.
*589 Other states have adopted the model statute with varying limitation on non-legals: New Hampshire, 50 per cent, Rev. Laws 1942, c. 342, sec. 22, as amended by Laws 1945, c. 30; c. 363, sec. 17 and Laws 1949, c. 134; New York, 35 per cent, N.Y. Pers. Prop. Law, sec. 21(1), as amended by Laws 1950, c. 464 and Laws 1951, c. 627; North Dakota, 50 per cent, Rev. Code 1943, sec. 6-0515, as amended by Laws 1951, c. 103; Pennsylvania, 33-1/3 per cent, Laws 1951, Act 340. See 1952 Supplement, Scott on Trusts, vol. 2, sec. 227.13, page 103; 1 Rutgers U.L. Rev. 130.
In one respect, however, the New Jersey statute differs from the other states: The Legislature has created this new classification, "limited legal investments," and so far as I am aware, New Jersey appears to be the only state to have established such a category. 90 Trusts and Estates, No. 10, page 684, October, 1951, Frank G. Sayre, "Prudent Man Rule for Trust Investments."
The primary question is whether or not the statute is constitutional. To determine this requires a consideration of the nature of the trust instrument, the rights of the parties thereto and the effect of the enactment thereon.
A will is not a contract; it is a unilateral disposition of property. The right to dispose of one's property existed at common law, has been recognized in this State from earliest Colonial times, and is undoubtedly a vested right. Renwick v. Martin, 126 N.J. Eq. 564, at page 580 (Prerog. 1939); Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444, at page 452 (Ch. 1941); Bottomley v. Bottomley, 134 N.J. Eq. 279 (Ch. 1944). A trust agreement between a settlor and a trustee is, of course, a contract. The right of a beneficiary to receive income in accordance with the provisions of a will or an inter vivos trust instrument is a vested right.
The investment of trust funds by a trustee is, however, an administrative function subject to control by the trust instrument, and in the absence of lawful direction therein, is regulated by statute or court decisions pertaining thereto. *590 Reiner v. Fidelity Union Trust Co., 126 N.J. Eq. 78 (Ch. 1939), reversed on other grounds 127 N.J. Eq. 377 (E. & A. 1940); Bankers Trust Co. v. Bacot, 6 N.J. 426 (1951). "The settlor's directions or authorizations about trust investments override any statutory or court rules about trust investments, unless such rules provide that the settlor is not to have that power." Bogert, Trusts and Trustees, sec. 681, page 370; New Jersey National Bank & Trust Co. v. Lincoln Mtge. & Title Guaranty Co., 105 N.J. Eq. 557 (Ch. 1930).
The Legislature has recognized the supremacy of a trustor's right to control investment of his funds. N.J.S. 3A:15-1, subd. v provides that the section enumerating legals "shall not apply where any trust instrument, will, or court having jurisdiction of the matter, specially directs in what securities or investments the trust fund shall be invested. * * *" N.J.S. 3A:15-17 further provides that no provision of the article which deals with legal investments in general "shall apply where it differs from any provision of a will, trust instrument or order or judgment of a court having jurisdiction of the matter." Further, in considerably broader language, N.J.S. 3A:15-25 provides that the trust instrument shall control.
The retrospective character of the act alone, therefore, does not render it unconstitutional, since it does not impair the obligation of contract, or interfere with or alter any vested right or legal remedy that antecedently existed. Borden v. Van Riper, 16 N.J.L. 7, at page 11 (Sup. Ct. 1837). Bonney v. Collector of Bridgewater, 31 N.J.L. 133, at page 135 (Sup. Ct. 1864); Deegan v. Morrow, 31 N.J.L. 136 (Sup. Ct. 1864); Baldwin v. City of Newark, 38 N.J.L. 158 (Sup. Ct. 1875); United R.R. Co. v. National Docks, &c., Co., 54 N.J.L. 180, at page 194 (E. & A. 1891); Presbytery of Jersey City v. First Presbyterian Church, 80 N.J.L. 572 (Sup. Ct. 1910).
The application of the act upon particular trusts depends upon the facts in each case. Accordingly, we shall now deal with each of the specific trusts involved in this proceeding.

*591 I. THE ALEXANDER H. ROSS ESTATE.
The settlor died on May 1, 1923, leaving a will dated May 28, 1921. His estate consisted of legals and non-legals. At his death, the non-legals comprised 42 per cent of the inventory value, but at the present time they amount to only eight per cent. The will contained no provision regarding the investment of trust funds.
The instrument being silent as to the duty of the fiduciary with respect to investments, the accepted doctrine applies, namely, that the Legislature may regulate investments to be made by fiduciaries, and a trustee may invest in such securities as are legal at the time the investment is made, and is not limited to such as were legal when the will was executed or at the death of the testator. N.J.S. 3A:15-26; N.J.S. 3A:15-29.
It has been so held even
"when the creator of the trust used the language `such securities as are by the laws of the State of New Jersey designated as legal investments for trust funds,' he meant such securities as `are, not as of the date of the creation of the trust but as of the date of the investment, by the laws of the State of New Jersey designated as legal investments for trust funds.'" Reiner v. Fidelity Union Trust Co., supra. Bankers Trust Co. v. Bacot, supra; In re Yates' Will, 259 Wis. 263, 48 N.W.2d 601 (Sup. 1951).
Therefore, the plaintiff may invest in the legal securities permitted by N.J.S. 3A:15-1, and, if it chooses, in limited legal investments, in accordance with the standard of care and not in excess of the percentage prescribed by the statute, N.J.S. 3A:15-18 et seq.; In re Emery's Will, 103 N.Y. Supp.2d 438 (Surr. 1951); In re Wells' Will, 104 N.Y. Supp.2d 354 (Surr. 1951); In re Katte's Will, 106 N.Y. Supp.2d 155 (Surr. 1951); Application of Engelbardt, 108 N.Y. Supp.2d 222 (Surr. 1951); In re Bell's Trust, 108 N.Y. Supp.2d 569 (Sup. 1951).

*592 II. THE THOMAS PRICE ESTATE.
Thomas Price died September 24, 1933, leaving a will dated February 24, 1928. He had been secretary of the Union Pacific Railroad and was a man of such prominence that his death was reported on the front page of the New York Times. He bequeathed his residuary estate to the plaintiff in trust, with directions to pay the net income to his wife for life, and upon her death the estate is to be distributed equally between two charities: the Orange Orphan Society of Orange, New Jersey, and the Board of Social Service of the Diocese of Newark, designated in the will as the Bonnie Brae Farm for Boys.
Respecting the plaintiff's authority to invest, the will provided as follows:
"SIXTH: My executor and trustee is expressly authorized and empowered to hold as part of my estate and of the trust hereby created any investments made by me in my lifetime which shall come into its hands as part of my estate and of said trust, notwithstanding that they may not be such as are legal for trust investments under the laws of the State of New Jersey; nevertheless authorizing and empowering said executor and trustee, whenever in its judgment such action shall be either necessary or advisable for the safety or enhancement of my estate or of said trust, to sell and dispose of the same from time to time, and the proceeds of such sale or sales shall be invested and reinvested in such securities as are lawful for trust investments under the laws of the State of New Jersey."
When the testator died, 26 per cent of the inventory value of his estate consisted of non-legals, but at the present time only approximately six per cent is in common stocks originally owned by the decedent. The life tenant and one remainderman, Orange Orphan Society, take the position that the prudent man statute applies to the trust, but the other remainderman, Bonnie Brae Farm for Boys, urges that it is inapplicable.
The cardinal rule of construction is that the intention of the testator be given effect if it can be ascertained. The intention is to be gathered from the will in the light *593 of the circumstances surrounding the testator at the time of the will's execution, giving consideration to his pecuniary and family situation. Wiggins v. Wiggins, 65 N.J. Eq. 417 (Ch. 1903); Clause v. Rohde, 133 N.J. Eq. 105 (Ch. 1943); Reed v. Schuh, 136 N.J. Eq. 11 (Ch. 1944); Blauvelt v. Citizens Trust Co., 3 N.J. 545 (1950); New Jersey Practice, Clapp, Wills and Administration, vol. 5, sec. 103 et seq.
Such intent when discovered is the law of the trust and it is the fundamental duty of the trustee to administer the estate according to the intent except when authorized to deviate from the terms of the instrument by an order of the court. Lambertville National Bank v. Bumster, 141 N.J. Eq. 396 (Ch. 1948). "Neither the court nor a beneficiary or the Legislature is competent to violate such intent and to substitute its discretion for that of the trustor." 54 Am. Jur., Trusts, sec. 274, page 218.
N.J.S. 3A:15-25 states:
"If a trust instrument prescribes, defines, limits or otherwise regulates a fiduciary's powers, duties, acts, or obligations in acquiring, investing, reinvesting, exchanging, retaining, selling, valuing or otherwise acting with respect to the property of a trust estate, the trust instrument shall control notwithstanding this article; * * *"
The following section, N.J.S. 3A:15-26, reads:
"Whenever any trust instrument or any statute of this State, other than Article 9 of `An act concerning banking and banking institutions (Revision of 1948)' approved April 29, 1948 (L. 1948, c. 67), directs or authorizes a fiduciary to make any investment for a trust estate in `legal investments,' or in `investments in which a fiduciary may by law invest' or in `legal investments for trustees' or uses words of similar import, such words shall, in the absence of an express provision to the contrary contained in such trust instrument or such statute, be taken to include limited legal investments of the aggregate value as limited by this article."
From the pertinent provisions of the statute and the law applicable, I construe that the general rule that a trustee may make such investments as may be legal when made, not limited to those legal when the will was made or at the death *594 of the testator, Reiner v. Fidelity Union Trust Co., supra; Bankers Trust Co. v. Bacot, supra, applies in the absence of provision in the trust instrument and is subject to and qualified by the rule that the intention of the testator, if ascertained, is the law of the trust.
The Legislature could have augmented the existing list of legals by adding common and preferred stocks, and thus have constituted them lawful investments of the same rank as "legals." It is significant that, instead, the Legislature originated a new classification, viz., "limited legal investments." These are distinguished from "legal investments" in the following definitions in N.J.S. 3A:15-18.
"(e) `legal investments' includes all investments which a fiduciary is authorized to make pursuant to any statute of this State, other than this article; * * *;
(f) `limited legal investments' includes all investments which are not legal investments: * * *."
Investment in common stocks, therefore, is not a "legal investment" but a "limited legal investment."
In 1928 when Price made his will, and in 1933 when he died, the statutory and decisional prohibition against investment in common stocks by a fiduciary without authorization in the trust instrument or court order was generally understood and firmly imbedded in our thinking. It must be presumed that Price's will was drawn and executed in view and in contemplation of the generally established law. Bonnell v. Bonnell, 47 N.J. Eq. 540 (Ch. 1890); Tuerk v. Schueler, 71 N.J.L. 331, 333 (E. & A. 1904); Wills v. Wills, 72 N.J. Eq. 782 (Ch. 1907), affirmed 73 N.J. Eq. 733 (E. & A. 1908). Central Hanover Bank and Trust Co. v. Bruns, 16 N.J. Super. 199 (Ch. Div. 1951).
The court will, of course, take judicial notice of the fact that between the time of the execution of the will in 1928 and Price's death in 1933, there was widespread fluctuation in the stock market, general economic collapse and worldwide depression. The testator was aware of the distinction *595 between legals and non-legal investments, for he expressly empowered his executor and trustee to retain such non-legals as might come into its hands as part of his estate, but he specifically directed that upon a sale of any such securities the proceeds "be invested and reinvested in such securities as are lawful for trust investments under the laws of the State of New Jersey."
The foregoing are important factors to be considered in conjunction with the language of the will in the endeavor to ascertain the testator's intention.
The testator's will fairly construed "prescribes, defines, limits or otherwise regulates" (N.J.S. 3A:15-25) the plaintiff's power to invest, and confines investments strictly to "legals." If the trustee were permitted to invest in common stocks which were clearly not legal at the time the will was executed nor at the time of the testator's death, it seems to me that the distinction which he made between legals and non-legals would be ignored, and his intention violated. Courts have no power to frustrate the testator's intention.
In Ritchie v. Farrelly, 16 N.J. Super. 214 (Ch. Div. 1951), the testator died before the enactment of the Prudent Man Act. The provision in his will was similar to the provision in the Price will, but it was held there that the trustee could invest in "limited legal investments." Although the phraseology in the wills is similar, from the facts before me I construe that it was Price's intention that his trustee be restricted to legals.
Therefore, I conclude that the authorization in the will under consideration restricts the trustee to invest in securities on the list of legals at the time the investment is made, excluding "limited legal investments" or any which are qualifiedly legal. In re Jones' Will, 221 Minn. 524, 22 N.W.2d 633 (Sup. 1946); In re Sutro's Estate, 105 N.Y. Supp.2d 555 (Surr. 1951).

*596 III. THE RICHARD R. YOUNG ESTATE.
The testator died on April 30, 1931. He created a testamentary trust for the benefit of his widow and others. His executors and trustees were vested with unrestricted discretion in the investment and reinvestment of trust funds, as follows:
"Seventh. My executors and trustees are expressly authorized and empowered to hold as part of my estate any investments made by me in my lifetime, and to invest and reinvest the moneys held hereunder in such securities as they may deem advisable and for the best interests of my estate, notwithstanding the same may not be such as are classified by the laws of the State of New Jersey as legal investments for trust funds."
The prudent man statute has no application to the instant case. By virtue of the authority conferred upon the trustees by the will, the statutory 40 per cent limitation on "limited legals" and the standard of care prescribed by the statute do not apply. Reinhardt v. National State Bank, supra; Fidelity Union Trust Co. v. Lowy, 123 N.J. Eq. 90 (Ch. 1938); In re Bender's Will, 105 N.Y. Supp.2d 15 (Surr. 1951); In re Budd's Will, 107 N.Y. Supp.2d 971 (Surr. 1951).
Under these circumstances, the standard of care required of a trustee is that which has been declared by the decisions. Recently the Supreme Court in Blauvelt v. Citizens Trust Co., supra, stated:
"The conduct of the trustee then is to be measured by the principle that a trustee owes an obligation to the cestuis and a duty to exercise that degree of care, prudence, circumspection and foresight, that an ordinarily prudent person would employ in like matters of his own."
See also Wild v. Brown, 120 N.J. Eq. 31 (Ch. 1936); Reinhardt v. National State Bank, supra; In re Ebert, 136 N.J. Eq. 123 (Prerog. 1945).

*597 IV. THE THOMAS T. BARR, JR., TRUST.
Thomas T. Barr, Jr., was a municipal bond expert, a member of a firm of Wall Street brokers specializing in municipal bonds. On April 30, 1935, a trust indenture was executed under which Mr. Barr designated himself and the plaintiff as trustees. He died on April 14, 1949, since when the plaintiff has been sole trustee. At his death, only one per cent of the testamentary estate was in common stocks or other non-legal securities. Of the assets in the trust estate, 56 per cent are now in common stocks, although at the establishment of the trust it consisted entirely of common stocks.
The pertinent provisions of article Third of the trust indenture are as follows:
"So long as the Settlor shall act as Individual Trustee hereunder, the Trustees shall not be restricted to the investments authorized by law or rule of court for the investment of trust funds, but shall have full power and authority in their uncontrolled and uncontrollable discretion to invest and reinvest in, acquire by exchange and to hold, any investments which the Trustees may deem likely either to yield a substantial annual return or to increase the principal of the trust estate by appreciation in value, including but not limited to, common and preferred stocks, bonds, notes, debentures, and certificates of deposit without regard to the proportion such property or property of a similar character, so held, may bear to the entire amount of the trust estate, and without regard to the dividend or interest payments or other income to be derived from such investments for the time being or at any time while such investments shall be held."
The following clause of the same article is important in the search to ascertain the intention of the settlor:
"After the Settlor ceases to act as Individual Trustee hereunder the corporate or surviving Trustee may retain and continue to hold, for so long as it considers such holding advisable and in the best interests of the trust estate, any property or investments then held by it, but shall be limited in making new investments to such as shall then be legal for the investment of trust funds under the laws of the State of New Jersey and of the State of New York."
*598 The eighth article provides, inter alia:
"This indenture is executed by a resident of the State of New Jersey in said state, is intended to be made, administered and given effect under and in accordance with the present existing laws and statutes of said state, and the validity and construction thereof shall be determined and governed in all respects by such laws and statutes."
The question is whether the surviving trustee may invest in non-legal securities under the present laws of the States of New Jersey and New York. If not, must investment be made in securities legal in 1935 when the indenture was executed, or in 1949 when the testator died. What did the settlor intend when he stipulated that the surviving trustee should be limited to such investments "as shall then be legal"? Ordinarily, the word "then" would refer to the time when the investment is made. Reiner v. Fidelity Union Trust Co., supra; Bankers Trust Co. v. Bacot, supra. However, article Eighth provided that the trust be administered "in accordance with the present (1935) existing laws and statutes."
The pertinent principles are discussed above in the consideration of the Price trust and need not be repeated. Quite obviously, Barr intended that the surviving trustee should not invest in non-legals or limited legals, but was to be restricted to reinvestments in legals only. He differentiated between the character of securities to be bought during the time when both he and the plaintiff acted as trustees, and after his death when the plaintiff would serve alone. The precise distinction would be obliterated and the settlor's intention thwarted if the plaintiff were to purchase limited legal investments. So much is clear.
The more difficult question is: Should investment be made in legals as of the date of the trust instrument, 1935, or as of the date of the settlor's death, 1949? The plaintiff contends that from a consideration of the settlor's background and the general tenor of the trust instrument, it may reasonably be inferred that he intended that the surviving trustee be limited to investments in securities which were legal at the time of the death of the settlor, namely, 1949. *599 It points out that the provision of the eighth article that the indenture be administered under "present existing laws and statutes" governs the general administration of the estate, while article Third refers specifically to investments and reinvestments. It directs "after the Settlor ceases to act as Individual Trustee hereunder the corporate or surviving Trustee * * * shall be limited in making new investments to such as shall then be legal * * *" From a construction of the entire instrument and a consideration of the circumstances surrounding its execution, I am of the opinion that the plaintiff's interpretation is reasonable and correct; and the right to invest is confined to such securities as were legal in 1949 when the settlor died, for that is the date after which he ceased to act as trustee.
As the trust instrument prescribes how the trust funds should be invested, it controls. N.J.S. 3A:15-25. Investment in limited legals or non-legals under the prudent man statutes of the States of New Jersey and New York is precluded. In re Sutro's Estate, supra.

V. THE CAMDEN TRUST CO.
The amicus curiae in addition to seeking a ruling on the constitutionality of the prudent man statute, N.J.S. 3A:15-18 et seq., presents some hypothetical trust provisions and asks construction of N.J.S. 3A:15-25 with respect to the hypothetical situations which might arise thereunder. It is settled, however, that courts refrain from deciding moot cases and in such instances a declaratory judgment construing a statute will not be rendered. N.J. Turnpike Authority v. Parsons, supra; Weissbard v. Potter Drug & Chemical Co., 6 N.J. Super. 451 (Ch. 1949), affirmed 4 N.J. 115 (1950).
Judgment in conformity with this opinion may be presented.