168 A.2d 306 (1961)
WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee under Agreement with Walter S. Carpenter, Jr., Appellant,
v.
Walter S. CARPENTER, Jr., W. Samuel Carpenter, 3rd, and Clifton Center, Inc., a corporation of the State of Delaware, Appellees.
Supreme Court of Delaware.
March 1, 1961.
William S. Potter, James L. Latchum and Blaine T. Phillips of Berl, Potter & Anderson, Wilmington, for appellant.
E. N. Carpenter, II, of Richards, Layton & Finger, Wilmington, and Mac Asbill, Jr., of Sutherland, Asbill & Brennan, Washington, D. C., for appellees W. Samuel Carpenter, 3rd, and Clifton Center, Inc.
Before SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ.
SOUTHERLAND, Chief Justice.
The case involves the constitutionality of an amendment to the spendthrift trust statute as applied to a trust created before the enactment of the amendment.
The facts are these:
By agreement dated November 21, 1941, Walter S. Carpenter, Jr., transferred to Wilmington Trust Company 75 shares of stock of Christiana Securities Company to be held subject to certain trusts specified in the trust agreement. The trust is irrevocable. The net income is payable to W. Samuel Carpenter, 3rd, during his lifetime, and upon his death the principal is payable to his issue.
The agreement contained the following spendthrift clause:
"The interest of any beneficiary hereunder, in either the income or principal of any trust hereunder, shall not be anticipated, alienated or in any other manner assigned or transferred by such beneficiary; and such interest shall be exempt from execution, attachment, distress for rent, and other legal or equitable process which may be instituted by or on behalf of any creditor or assignee of such beneficiary."
At the time when the trust was created the validity of spendthrift trusts in Delaware *307 had been explicitly recognized by the legislature. Act of April 6, 1933, 38 Del.L. c. 186; 12 Del.C. § 3536(a). The validity of such a trust antedating the act seems to have been impliedly recognized. Cf. Wilmington Trust Co. v. Wilmington Trust Co., 21 Del.Ch. 102, 108 A. 597.
In 1959, § 3536 was amended by adding thereto the following subsection:
"(b) Notwithstanding the provisions of subsection (a), a beneficiary entitled to receive all or a part of the income of a trust shall have the right to assign gratuitously in writing, at any time or from time to time, a stated fraction or percentage of his entire remaining income interest in such trust to the State of Delaware, or to any corporation, church, community chest, fund or foundation described in Paragraph (5) of Section 1118, Title 30 of the Delaware Code, and such assignment shall be valid and binding on all parties irrespective of any restrictions on assignment contained in the instrument creating or defining the trust; provided, however, that this subsection shall not authorize a beneficiary of such a trust to reduce any part of his income interest which is subject to such restrictions on assignment below 50% of what such interest would be if no assignments were made hereunder. Any interest assigned hereunder, together with a corresponding portion of the corpus of the trust, shall be treated as a separate share and thereafter no provision of the trust permitting invasion of corpus for the benefit of the assignor shall be exercisable with respect to such share." Act of October 1, 1959, 52 Del.L. c. 199.
Section 2 of the act provides that the amendment shall be applicable to all trusts, "whether created before, on, or after the date of enactment of this Act." 12 Del.C. § 3536 note.
On December 23, 1959, W. Samuel Carpenter, 3rd, the income beneficiary, executed and delivered to Clifton Center, Inc., a charitable corporation of the State of Delaware, a deed of gift irrevocably granting and assigning to Clifton Center for the duration of the donor's life an undivided ten per cent of the donor's entire beneficial interest in the trust above described. On the same day Clifton Center accepted the gift and the trustee acknowledged receipt of the assignment and of the acceptance.
On February 11, 1960, the settlor, apparently in response to an inquiry from the trustee, wrote the trustee as follows:
 "Mr. Joseph W. Chinn, Jr.
 President
 Wilmington Trust Company
 Wilmington, Delaware
"Dear Mr. Chinn:
"When I created Trust No. 3134 in 1941, I thought then and think now that I parted with all interest in the trust property, and that I had no further rights with respect to it. My acceptance of Sam's assignment on behalf of Clifton Center was solely in my capacity as president of Clifton Center, and is not to be construed as consent by me, as the grantor of this trust, to the assignment. My only desire is that the trust be administered as required by law.
 "Yours sincerely,
 "W. S. Carpenter, Jr."
The trustee, being in doubt whether the amendment to the spendthrift trust statute is constitutional, filed a complaint for instructions against the settlor, the income beneficiary, and Clifton Center, Inc.
The answer of the settlor reiterates his position that, having no interest or rights in the trust, he has no right to consent or not consent. It avers in conclusion that, having no interest in the proceedings or in the trust agreement, he submits himself to the jurisdiction of the court.
The joint answer of the income beneficiary and Clifton Center, Inc., prays that *308 the court instruct the trustee that the amendatory statute is valid and that the assignment should be complied with.
The Vice Chancellor upheld the validity of the law and instructed the trustee accordingly. The trustee appeals.
The trustee makes three contentions:
1. The settlor has not consented to any modification of the trust agreement, nor has he consented to the assignment. Consequently, the rule that the settlor and the income beneficiary of a spendthrift trust may remove a restriction upon the alienation of the income does not apply.
2. The trust agreement is a contract within the meaning of the provisions of the federal constitution forbidding impairment of the obligations of contracts by state laws. U.S.Constitution, Art. I, § 10. Coolidge v. Long, 282 U.S. 582, 51 S.Ct. 306, 75 L.Ed. 562; Fidelity Union Trust Co. v. Price, 18 N.J.Super. 578, 87 A.2d 565, 570; 11 N.J. 90, 93 A.2d 321, 35 A.L.R. 2d 980. The 1959 amendment impairs the obligation of the 1941 trust agreement and its retroactive provisions are void. State v. Caldwell, 181 Tenn. 74, 178 S.W.2d 624, 151 A.L.R. 1410.
3. The 1959 amendment violates the constitutional principle, federal and state, that existing property rights may not be taken without due process of law. Amendment 14 to the federal constitution; Art. I, § 7, § 9 of the state constitution, Del.C. Ann. The settlor has an existing property right in the execution of the trust. In re Borsch's Estate, 362 Pa. 581, 67 A.2d 119; In re Moulton's Estate, 233 Minn. 286, 46 N.W.2d 667, 24 A.L.R.2d 1092.
To these contentions the income beneficiary and Clifton Center, Inc. make the following answers:
1. They concede that the settlor did not consent to the assignment.
2. But, they say, a trust is not essentially a contract, but a conveyance of property. The trustee's undertaking to administer the trust confers no contractual rights on the settlor. Restatement  Trusts, § 197; 2 Scott on Trusts, § 200.1. Unless he has reserved some rights to himself, a settlor has no standing to enforce the provisions of the trust. Restatement  Trusts, § 200. He has parted with all his interest in the trust property. He has, therefore, no contract right that is impaired by the amendatory act of 1959. Brearley School v. Ward, 201 N.Y. 358, 94 N.E. 1001, 40 L.R.A.,N.S., 1215.
3. The defendants reply that, for like reasons, a settlor has no existing property right in the enforcement of a trust that he has created. The Pennsylvania decisions, they say, are unsound. 2 Scott on Trusts, § 152.1; Griswold, Spendthrift Trusts, § 391; Brearley School v. Ward, supra. Therefore the amendatory act does not deprive him of any property.
4. Finally, say the defendants, the whole subject of restraints on alienation of property is within the control of the legislature in the exercise of the police power. A spendthrift trust provision is analogous to an exemption from execution process. No one has a constitutional right in such an exemption. Brearley School v. Ward, supra. The act is therefore a constitutional exercise of the police power.
These are the issues made by the pleadings and the briefs.
The development of these questions in the briefs of counsel ranges over a wide field. All of this discussion, and the numerous decisions cited, have their place in a broad survey of the law of spendthrift trusts.
But we think the issue before us is a much narrower one. This is not a case in which the settlor is seeking to enforce or protect any right of his (if he has any) in respect of the trust; he disclaims any interest in it. This is not a case in which a beneficiary is seeking to protect his rights in the trust income; on the contrary, he seeks to avail himself of the provisions of the statute. And, finally, this is not a case in which the trustee is defending his trust *309 agreement against an attack which would diminish the trust property or destroy the trust. On the contrary, the trust res is unimpaired, and the only effect of the statute and the assignment of the beneficiary is to divert the payment of a portion of the income to a charity.
How, then, has the statute inflicted injury upon any party before the Court?
Let us examine the principles of law relied on by the trustee in order to determine how far, if at all, they govern the case.
First: the contention that a trust agreement constitutes a contract between the settlor and the trustee. For the sake of argument, let us assume that to be correct. Has the settlor any standing to enforce it?
The law on this point does not seem to us to be settled, notwithstanding the flat statement in the Restatement and in the text books that the settlor has no such standing. Restatement  Trusts, § 200; 2 Scott on Trusts, § 200.1; 1 Bogert, Trusts and Trustees, § 42. There are some cases supporting this view. See Ex parte Ingalls, 266 Ala. 45, 93 So.2d 753; In re Reynolds' Estate, 131 Neb. 557, 268 N.W. 480; Culbertson v. Matson, 11 Mo. 493. Contra, Abbott v. Gregory, 39 Mich. 68; Carr v. Carr, 185 Iowa 1205, 171 N.W. 785.
For a discussion of the point, see the note in 62 Harv.L.Rev., 1370-1377. The writer suggests that ordinarily the settlor has no interest to protect, and no standing to enforce the trust; but that in special cases, such as the case of a trustee unwilling to enforce the trust provisions, the settlor should be allowed to call the trustee to account.
Let us assume that in some circumstances the settlor might have standing to enforce the provisions of the trust, and that he might have done so here. Even so, the point is immaterial here since the trustee itself is defending the trust.
Hence we do not reach the question of the settlor's right to enforce the trust.
Second: the rights of the beneficiary. When we speak, from the viewpoint of the beneficiary, of contract obligations or of property interests, we must mean an obligation owed to the beneficiary under the trust instrument, or property vested in him by that instrument. The broad legal question discussed by counsel is this: If a statute retroactively abolishes or limits spendthrift trust restraints on alienation, is it unconstitutional as to the beneficiary, either under the contract clause or the due process clause? The conflicting views are set forth in State v. Caldwell, supra (statute unconstitutional on both grounds), and Brearley School v. Ward, supra (statute upheld against both contentions). Dean Griswold appears to support the latter view. Spendthrift Trusts, § 391.
But the beneficiary makes no claim that his rights are invaded; he seeks to avail himself of the permission granted by the statute.
The broad question discussed by counsel is not presented here.
Third: as to the trustee. Of course, broadly speaking, it is the duty of a trustee to defend his trust. Lewis v. Hanson, 35 Del.Ch. 411, 128 A.2d 819, 834-835; 2 Scott on Trusts, § 178. The typical case is one in which the attack may terminate or destroy the trust, or diminish the trust fund.
Although this is not such a case, the statute does modify one provision of the trust instrument, without the consent of the settlor. To that extent, therefore, the settlor's intention is overridden by the statute, and the trustee seeks to uphold it.
But the modification is of such a limited nature that it is, in our opinion, clearly within the legislative power to regulate restraints on alienation of property. It does not take anything from the beneficiary; it is merely permissive. It does not seek to terminate the trust or impair the trust res. Indeed, in the light of the present federal tax structure, it is wholly reasonable *310 to believe that the purpose of the statute is to give tax advantages to beneficiaries receiving large incomes. Such a purpose is not necessarily inconsistent with the original intention of the settlor expressed in the trust instrument. This circumstance is of weight in determining the reasonableness of the statutory modification of existing trust agreements.
The subject matter of the amendatory statute is that of restraints on the alienation of property. This is a field historically within legislative regulation  certainly so far as the regulatory statute operates prospectively only. But even if retroactively, the statute will be upheld if there is a reasonable basis for it. Cf. Demorest v. City Bank Farmers Trust Co., 321 U.S. 36, 64 S.Ct. 384, 391, 88 L.Ed. 526. In that case a statute changed the rule in respect of apportionment between principal and income of the proceeds of salvage operations of mortgaged property. Though retroactive it was upheld. Justice Jackson said:
"The whole cluster of vexatious problems arising from uses and trusts, mortmain, the rule against perpetuities, and testamentary directions for accumulations or for suspensions of the power of alienation, is one whose history admonishes against unnecessary rigidity."
In our opinion the amendatory act effects only a reasonable modification of the spendthrift trust provisions.
If this conclusion is correct, as we think it is, it must follow that even if the settlor himself objected to the modification, his objection would fail.
The Borsch case in Pennsylvania, above cited, would seem to support the view that once the settlor of a trust has specified the conditions of his gift, he, or his estate, is possessed of a property right in the enforcement of these conditions, and the legislature may not change them in any respect.
The idea of a "property right" in the enforcement of conditions affecting trust property in which the settlor has no interest seems anomalous. It has been much criticized. 28 Mich.L.Rev. 889; 23 Temple L.Q. 242. In any event, the Borsch case is distinguishable here, since the statute in that case in effect permitted the termination of the trust through the means of the renunciation of income by the life beneficiary.
On the other hand, it is unnecessary for us to approve the broad rule of the Brearley case that a spendthrift trust, being analogous to exemption statutes, is in all its asspects subject to the plenary control of the legislature.
We hold that the amendatory statute of 1959 is a reasonable regulation of spendthrift trusts, even though retroactive.
Obviously, of course, we have expressed no opinion on the constitutionality of a retroactive statute which either abolishes spendthrift provisions of a trust or attempts to make the income of such a trust reachable by creditors of the beneficiaries. This case does not touch upon such questions.
The judgment of the Court of Chancery is affirmed.