Claire Ellegood Smith, Alan A. Smith, a.k.a. Alan Dashiell, and Winder D. Smith, Defendants Below, Appellants,

*vs.*

Bank of Delaware, a banking corporation of the State of Delaware, Trustee U/A of Joshua A. Ellegood, Plaintiff Below, Appellee.

*Supreme Court, On Appeal, May 4, 1966.*

*Richard L. McMahon,* of Berl, Potter & Anderson, Wilmington, for appellants.

*Henry N. Herndon, Jr.,* and *Arthur J. Sullivan,* of Morris, James, Hitchens & Williams, Wilmington, for appellee.

CAREY and HERRMANN, Justices, and STOREY, Judge, sitting.

CAREY, Justice: The question presented by this appeal from the Court of Chancery is whether the living beneficiary of a spendthrift trust may, after having received the benefits for many years, renounce a portion of the future income.

The appellee, as trustee of an *inter vivos* trust created by Joshua A. Ellegood, filed a bill seeking instructions on the debated question. The Court below held the renunciation invalid on the unqualified ground that, since a beneficiary cannot accept part and disclaim part of a unitary gift at its inception, she may not thereafter reject part of the gift. See *Smith v. Bank of Delaware,* 42 *Del.Ch.* 335, 211 *A.2d* 591. If the Court below intended to say that this rule applies to trusts which contain no spendthrift clause, we would have some doubts about its conclusion. We need not decide the point, however, because we are satisfied that it reached the correct result in this case. This Court will not reverse a correct judgment even though a wrong reason was assigned by the lower Court. *Greene v. Johnston,* 34 *Del.Ch.* 115, 99 *A.2d* 627, 42 *A.L.R.2d* 906; *Maurer v. International Re-Insurance Corp.,* 32 *Del.Ch.* 447, 86 *A.2d* 360; *Polotsky v. Artisans Savings Bank,* 7 *W.W.H.* 151, 188 *A.* 63, 107 *A.L.R.* 1458. We are here dealing with a spendthrift trust and are accordingly concerned only with the rules applicable to such a trust.

The trust agreement was executed in 1925. Under its provisions, after the death of certain other beneficiaries, the income became payable to the settlor's daughter, Claire Ellegood Smith, for her lifetime. Upon her death, it becomes payable for life in equal shares to her two sons and any other children born to or adopted by her. At the death of each child, a proportionate part of the principal is to be paid to his or her issue. A spendthrift clause, applicable to all living beneficiaries, provides that neither principal nor income

"shall be liable to execution, attachment or other legal process, or be capable of assignment by way of anticipation, or be in any other way subject to the debts, control or liabilities of those beneficiaries".

Mrs. Smith has received the income from this and two other trusts created by her father for many years, the donor having died in 1928. She is presently receiving about $41,000 annually from this trust and about $9,000 annually from the others. In February, 1964, Mrs. Smith filed with the trustee an instrument by which she renounces and disclaims sixty percent of her life estate under the 1925 trust. At the same time, her two only sons requested the trustee to forward to each of them thirty percent of the future income. In her renunciation, Mrs. Smith stated that it was her intention "to terminate my life interest in the said trust estate to the extent of sixty percent thereof as effectively as would my death", and that the renunciation should be void *ab initio* if the Court should hold that it is invalid or that her estate has not thereupon been terminated for all purposes as effectively as would her death. The record contains her affidavit setting forth a summary of her assets and income, as well as those of the two sons. It points out that her present income is more than she needs, that the sons need additional income for various purposes, and that there would be substantial savings in income taxes if the two sons were to receive the portion of the income which she seeks to renounce.

The clear intent of the renunciation is to terminate *in futuro* sixty percent of her interest and to accelerate the sons' future interests to that extent; if that intent fails, the instrument is a nullity. We are accordingly not here concerned with her right to dispose of income after she has actually received it, nor are we primarily concerned with the power to refuse to accept income after it is due and payable to her.

The general rule is that the beneficiary of a spendthrift trust, having once elected to accept its benefits, may not thereafter renounce those benefits unless permitted to do so by the trust instrument. 2 *Bogert on Trusts and Trustees* (*2d ed.*) § 226; 1 *Scott on Trusts* (*2d. ed.*) § 337.7; *Griswold on Spendthrift Trusts* (*2d ed.*) § 524; 2 *Restatement, Trusts 2d* § 337. By the very terms

of such an instrument, the donor demonstrates his intent to restrict the beneficiary's control over the income, and the beneficiary accepts the gift subject to that limitation. A renunciation after acceptance would thus contravene an important part of the donor's expressed desires. *Blackwell v. Virginia Trust Co.,* 177 *Va.* 299, 14 *S.E.2d* 301; *In re Borsch's Estate,* 362 *Pa.* 581, 67 *A.2d* 119; *King v. United States, D.C.,* 12 *F.Supp.* 614.

The reasons which prevent the beneficiary of a spendthrift trust from renouncing those benefits *in toto* apply equally to the renunciation of a part of them. The donor's expressed limitations, especially the prohibition against "control" by a beneficiary, would still thereby be altered; the difference is merely one of degree, and the principle is the same. If the *cestui* is allowed to renounce sixty percent, how could a Court refuse to allow her to renounce ninety-nine percent of that income, thus in practical effect accomplishing the very result which the settlor has sought to forbid?

The cases of *Wilmington Trust Co. v. Carpenter,* 31 *Del.Ch.* 411, 75 *A.2d* 815, and *Weymouth v. Delaware Trust Co.,* 29 *Del.Ch.* 1, 45 *A.2d* 427, do not imply that the general rule is inapplicable to the present situation. In both of them, the beneficiary seeking to renounce was the same individual who created the trust a fact requiring the application of different principles. In the *Carpenter* case, *supra,* the Court stated the general rule forbidding renunciation and said: "This would seem to depend upon the intent of the donor of the fund and is usually determined by the provisions of the instrument creating the trust". Appellant bases an argument on this quoted language, suggesting that Dr. Ellegood's wishes will not be violated here because Mrs. Smith will still receive ample income for her support and the subsequent life beneficiaries will be benefited by the acceleration. We do not find this argument convincing. Certainly, there is no language in the instrument expressly permitting her to take this action. It does indicate that his first concern was his daughter's welfare for her lifetime. In providing for her, he did not create simply a trust for her support, nor did he confer discretion upon anyone as to the amount to be paid her. Even if we accept the theory that the gift is equivalent to one for her support, and that

forty percent of the income is sufficient for her present needs, how can we know whether it will continue to be so in future years? Yet approval of her renunciation would completely terminate any right in the future to receive more than that percentage. In short, she is attempting to accomplish something which is inconsistent with the donor's intent.

Appellant also suggests that the limitations contained in this instrument are invalid because the trust was created prior to 1933, which was the year when our Legislature first enacted the statute recognizing the validity of spendthrift trusts. The original act is 38 *Laws of Delaware Ch.* 186 and is now *T.* 12 *Del.C.* § 3536.* As is shown by the remarks in *Wilmington Trust Co. v. Wilmington Trust Co.,* 21 *Del.Ch.* 188, 186 *A.* 903, doubts had existed prior to this statute concerning the validity of spendthrift provisions. No reported decision in this State has expressly passed upon the point. In most jurisdictions in this country, however, they were recognized as valid even in the absence of statute. *Griswold on Spendthrift Trusts (2d ed.)* § 58. The appellant suggests that our statute would have been totally unnecessary if they were valid without statutory authorization. This contention is not necessarily true. It is just as reasonable to assume that the legislative purpose was to resolve the existing doubts without waiting for a Court decision upon their validity. In any event, this matter of validity is basically a question of what the public policy of the State shall be. *Griswold on Spendthrift Trusts (2d ed.)* § 556. By the Statute, our Legislature has established Delaware's public policy; we see no reason at this late date to declare that a contrary policy existed prior to the passage of the statute. We therefore reject this suggestion.

For the reasons stated, the decree of the Court below will be affirmed.

---

* By 52 *L. of D.Ch.* 199, enacted in 1959, a beneficiary may now assign not more than fifty percent of his income interest to certain types of charities, not withstanding the trust restrictions. See *Wilmington Trust Co. v. Carpenter,* 39 *Del.Ch.* 528, 168 *A.2d* 306.