STATE *v.* CALDWELL *et al.*

*(Nashville,* December Term, 1943.)

Opinion filed March 4, 1944.

Roy H. Beeler, Attorney-General, and Nat Tipton, and Thomas H. Malone, III, Assistant Attorneys-General, for the State.

W. M. Fuqua and R. C. Boyce, both of Nashville, for defendant.

J. M. Peebles and E. J. Walsh, both of Nashville, *amici curiae.*

Mr. Justice Neil delivered the opinion of the Court.

Prior to the institution of this suit in the Chancery Court of Davidson County the State of Tennessee had an unsatisfied judgment against Rogers Caldwell in excess of four million dollars, upon which judgment an execution had been returned *nulla bona.* The State has filed its original bill against the judgment debtor and others for the purpose of reaching certain equitable interests in three trusts established for him by conveyances duly executed and recorded. The first deed was executed by James E. Caldwell and wife on September 30, 1930, and recorded in the Register's Office of Davidson County on

November 18, 1930. The defendant Nashville Trust Company was named as trustee in this instrument. The second trust deed was executed by May Winston Caldwell on December 13, 1937, and was registered in the Office of the County Register on December 15, 1937. The defendant Meredith Caldwell was named trustee in this instrument. The third trust deed was executed by May Winston Caldwell on December 23, 1938, and was registered in the Register's Office on February 3, 1939. All of the trusts are for the benefit of Rogers Caldwell for his life and contain provisions against alienation and that said property shall be free from the claims of creditors. Copies of the trust deeds are made exhibits to the bill. It is alleged in the bill that the General Assembly of the State in 1943 enacted a statute, amending Section 10353 of the Code of 1932, providing that property held under spendthrift trusts shall be subject to the claims of the State in all cases where the State is a creditor of the beneficiary. The Amendatory Act is Chapter 108, Public Acts of 1943. The complainant avers that by virtue of said act it has the right to file its bill in the Chancery Court to reach the interests of the defendant Caldwell in the property described and conveyed in trust for his benefit. The defendants demurred to the bill upon the following grounds:

(a) That Chapter 108 of the Public Acts of Tennessee of 1943, is in violation of Article 1, Sec. 20, of the Constitution of Tennessee as being retrospective and impairing the obligations of the contracts;

(b) That the Act is in violation of Article 1, secs. 8 and 17 of the Constitution of Tennessee, which forbid the taking of property except by law of the land and by due course of law;

(c) That the Act is in violation of Article 1, Sec. 10, of the Constitution of the United States which forbids the State to enact any law impairing the obligation of a contract, and in violation of Amendment 14, Sec. 1, to the Constitution of the United States precluding any state of depriving any person of life, liberty or property without due process of law;

(d) That the trusts are contracts, and expressly exclude the interest of the beneficiaries thereunder from the claims of creditors, and the said Chapter 108 of the Public Acts of 1943 should not be construed by the Court to cover such trust instruments; and

(e) That said Act is in violation of Article 11, Section 8, of the Constitution of Tennessee in that said Chapter 108 is class legislation granting to the State rights and privileges not granted to other persons.

The Chancellor overruled the foregoing demurrer and from his decree the defendant was granted a discretionary appeal to this Court. Before referring to the assignments of error it is important that we set out Section 10353 of the Code, as well as the Amendatory Act. They are as follows:

Code, section 10353 provides:

"To subject trust property; exception.—The creditor whose execution has been returned unsatisfied, in whole or in part may file a bill in chancery against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action, or money due to such defendant, or held in trust for him, except when the trust has been created by, or the property so held has proceeded from, some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered. (1832, Chap. 11, sec. 1.)"

Chapter 108 of the Acts of 1943 is as follows:

"An act to amend Section 10353 of the Code of Tennessee.

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, That Section 10353 of the Code of Tennessee be and the same is hereby amended by adding at the conclusion of said section the following language:

" 'Provided, however, that where the State of Tennessee shall be such judgment creditor, whether the debt be created before or after the effective date of this Act and whether or not the trust for the benefit of the debtor shall have been declared prior to or subsequent to the effective date of this Act, *the Chancery Court shall have jurisdiction to subject such property to the satisfaction of the claims of the State of Tennessee despite the fact that the trust has been created or the property so held has proceeded from some person other than the defendant himself and the trust declared by will duly recorded or deed duly registered.*'

"Sec. 2. Be it further enacted, That this Act shall take effect from and after its passage; the public welfare requiring it." (Italics ours.)

The assignments of error, seasonably and properly filed with the record, are but a repetition of the several grounds of the demurrer, it being here and now contended by defendants that the Chancellor was in error in overruling the demurrer. For a clear understanding of the legal questions involved, a brief statement of the contentions of the parties is necessary. Under the first four assignments of error the defendant contends that the trust property, described in the deeds above referred to, is a vested interest created and declared by contract; that

the Amendatory Act, being retrospective in character, is in violation of the Constitution of Tennessee and the Constitution of the United States in that it impairs the obligation of contracts, Article 1, sections 8, 17, 20, Tennessee Constitution; and Article 1, section 10, and amendment 14, United States Constitution. It is further insisted that spendthrift trusts have been unmistakably established and fully recognized in this State as valid, not only by judicial decision but by statute, and hence have become a rule of property; that as a result all beneficiaries under such conveyances have vested interests that cannot be impaired by any legislative enactment. It is earnestly urged upon us that the learned Chancellor was in error in holding that ''the claims of creditors under a spendthrift trust instrument arise out of and have their source wholly in the Act of 1832, Code, section 10353, and not out of the provisions of the trust instrument;'' that the immunity granted by said act ''is a simple exemption statute affecting the remedy rather than the right.'' The State rests its entire case upon the contention that the right of defendant Caldwell to the beneficial enjoyment of the property conveyed in trust, free from the claims of creditors, is governed by the statute; that said statute is an exemption statute; as held by the Chancellor, remedial in nature, and the State, having granted immunity, has the unquestioned right to take it away.

It cannot be doubted that the equitable interest of Rogers Caldwell, that is the subject of this litigation, has its origin in the deeds of trust from James E. Caldwell and May Winston Caldwell, referred to by defendants as ''contracts,'' duly recorded, and the question as to whether the trusts created are active or otherwise does

not arise. These deeds of trust, which were made exhibits to the original bill, were sufficient to transfer title to the property in question, the legal title being vested in the trustee and the equitable title in the *cestui que trust,* free from the claims of creditors. That the validity of spendthrift trusts has become firmly established in this State, both as a matter of policy and by statute, cannot be successfully controverted. We think it clearly appears from an examination of the decisions that their validity was recognized prior to the passage of the Act of 1832. The act itself took cognizance of their existence by expressly exempting such trusts from the claims of creditors of the named beneficiaries where they were "declared by will duly recorded or [by] deed duly registered." Prior to the passage of this statute, the jurisdiction of the Chancery Court to reach equitable assets of a judgment debtor to satisfy the claims of a creditor was more or less uncertain. Such assets were never subject to sale under an execution issuing out of a court of law. In *Jourolmon* v. *Massengill,* 86 Tenn., 81, 118, 5 S. W., 719, 731, Justice LURTON observed:

"The uncertain extent of the power of the chancery court to aid a creditor to reach intangible personal property not subject to execution is not only shown by the case of *Erwin* v. *Oldham* [14 Tenn., 185, 186, 27 Am. Dec., 458], but by the subsequent case of *Ewing* v. *Cantrell* [19 Tenn., 364]," etc.

It was to clarify this uncertainty that the Act of 1832 was passed. The object and purpose of the act was to confer jurisdiction upon the Chancery Court to grant relief to a judgment creditor "whose execution has been returned unsatisfied" and to discover "any property, including stocks, choses in action, or money due to such

defendant, or held in trust for him," *except trust property held under a "will duly recorded or deed duly registered."* The equitable interests that could thus be reached included any class of property, the transfer of which required no registration, such as the fraudulent transfer of stocks, money, choses in action, and other tangible personal property. We think the act impliedly recognized the validity of estates held in trust under formal conveyances requiring registration, since the Chancery Court continued to be without jurisdiction to reach such interests at the instance of creditors. The validity of spendthrift trusts did not depend upon this or any other statute. They were already made secure by judicial decisions upon the ground of public policy. The act was a legislative declaration in support of the validity of such trusts. No other conclusion can be drawn from the opinion of Justice LURTON in *Jourolmon* v. *Massengill, supra.* After vigorously defending spendthrift trusts on the ground of public policy and citing *Nichols* v. *Eaton,* 91 U. S. (1 Otto), 716, 23 L. Ed., 254, *Broadway Bank* v. *Adams,* 133 Mass., 170, 174, 43 Am. Rep., 504, and other authorities, he says (at page 117 of 86 Tenn., at page 731 of 5 S. W.) :

"Such trusts are supported and sustained by the courts of New York, and this has been so for a period of 50 years. The leading case of *Campbell* v. *Foster,* 35 N. Y., 361, refers to a number of cases sustaining such trusts. If it be said that the New York cases rest chiefly upon their statute depriving the courts of equity of jurisdiction to sustain a creditor's bill where the trust proceeds from one other than the debtor, *then we reply that we have precisely the same statute.* Theirs was enacted in 1828, and in 1832 we copied and re-enacted it." (Italics ours.)

It is most important in determining the issues now before us for us to observe that the Court held that the act and the decision *constituted a rule of property.* We here quote from the opinion (at page 126 of 86 Tenn., at page 734 of 5 S. W.) as follows:

"[The] case of *Nichols* v. *Levy,* as decided by this court, and the subsequent adoption of the construction of the act of 1832 by the supreme court of the United States, has been regarded as settling the construction of the act in question, and as finally settling the validity of such trusts. *The act and the decision constituted a rule of property, and it is believed that very many such trusts have been created in reliance upon it."* (Italics ours.)

There can be little doubt but that the Legislature of 1832 must have known that the validity of spendthrift trusts, while extremely controversial both in England and America, had been fully recognized by judicial decision. With this in mind, the Legislature must have intended that while Chancery Courts are given jurisdiction to reach certain equitable assets of debtors, the same jurisdiction is not enlarged to reach equitable estates "declared by will duly recorded or deed duly registered;" that such trusts having been declared valid by the courts, they shall also have the shield of the statute. This view is fully confirmed by the decision of the Supreme Court of the United States in *Nichols* v. *Levy,* 72 U. S. (5 Wall.), 433, 444, 18 L. Ed., 596, in which it was held that the Act of 1832 was a "rule of property" in Tennessee. We cannot therefore escape the conclusion that if it is a rule of property it must be presumed that the Legislature intended it to be such, and not an exemption statute for the benefit of poor debtors. We are therefore constrained

to hold that these defendants having acquired a title and interest in property by virtue of judicial decisions, grounded on public policy, supplemented by legislative declaration, and declared to be a rule of property, such title and interest must necessarily be adjudged a vested estate and beyond the reach of the Legislature. It is as much a vested estate as if there had been a conveyance to them of an estate in fee simple. The fact that it was inalienable and free from the claims of creditors would not alter the case.

In 54 C. J., p. 1110, sec. 8, it is said:

"Rule of Property. A settled legal principle governing the ownership and devolution of property; the decisions of the highest court of a state when they relate to and settle some principle of local law directly applicable to title. In the plural, those rules governing the descent, transfer, or sale of property, and the rules which affect the title and possession thereto."

The State relies strongly upon the case of *Brearley School* v. *Ward*, 201 N. Y., 358, 94 N. E., 1001, 40 L. R. A. (N. S.), 1215, Ann. Cas. 1912B, 251, as supporting its contention that our Act of 1832 is an exemption statute; that the Legislature, having granted an exemption, may take it away without impairing the obligation of contracts. It is true the New York Court of Appeals in that case, construing a statute similar to our own, held it to be an exemption statute. The pertinent section of the New York Code (sec. 1391) that was construed provides (we quote from the opinion, page 361 of 201 N. Y., page 1002 of 94 N. E.):

"That section as then amended provides, among other things, that where a judgment has been recovered and an execution thereon has been returned unsatisfied, and

where any wages, debts, earnings, salary, *income from trust funds* or profits are due and owing to the judgment debtor to the amount of $12 or more per week, the judgment creditor may apply to the court in which the judgment was recovered, and upon satisfactory proof of such facts the court must order an execution to issue against the wages, debts, earnings, salary, income from trust funds or profits of the judgment debtor.''

The income from trust funds, there sought to be reached did not arise from an estate acquired under a trust ''declared by will duly recorded or by deed duly registered.'' Moreover, it appears that there was no provision in the trust deed that the income of the beneficiary should be exempt from the claims of creditors. This distinguishes it from the instant case. While the Court called it an ''exemption statute,'' it was not necessary to so designate it in order to sustain the creditor's right to have the funds of the debtor applied to the satisfaction of his debt, inasmuch as the statute expressly provided that income from such trust funds may be applied to claims of creditors. We think the majority opinion declared its act an exemption statute to meet the objection of the *cestui que trust* that the act was retrospective and therefore invalid. This case is somewhat analogous to our own case of *White* v. *O'Bryan*, 148 Tenn., 18, 251 S. W., 785, 792, opinion by Special Justice MALONE, wherein the Court held that interest arising under a spendthrift trust set up by decree of the Chancery Court should be applied to the payment of debts of the *cestui que trust* because it was not ''declared by will duly recorded or [by] deed duly registered.'' The interest was not immune from the claims of creditors under the statute for the reason stated. The Court did not rest its decree upon

the ground that the act was an exemption statute and that the property was not exempt.

If the Act of 1832 is an exemption statute as commonly understood, then it violates the underlying principle of all exemption statutes that were ever enacted, that is, uniformity and equality. The law will not favor one class of debtors over another. Moreover, the right to an exemption must be found in the Constitution or the statute. It cannot find its basis in mere logic or probability. In Volume 22, Am. Jur., Exemptions, Sec. 3, pp. 5, 6, it is said, ''The right of a debtor to hold his property, or any part of it, free from the claims of creditors is not a common law right,'' but, in certain instances, ''is a creation of the Constitutions and statutes. . . . Any claim of exemption must be predicated upon these constitutional and statutory provisions and must be brought at least within their spirit, for, as will be seen, the courts cannot under the guise of construction enlarge the provisions to include claims not fairly within them.'' Again it is said (Sec. 7, p. 11), ''It is not for the court by *dictum* or decision to create a right of exemption where none is found in the statute.'' See also 35 C. J. S., Exemptions, sec. 1, p. 7; *Cox* v. *Ballentine*, 60 Tenn., 362; *Simons* v. *Lovell*, 54 Tenn., 510.

The statute under consideration bears no relation whatever to any of our exemption statutes, such as relate to certain kinds of personal property, wages of debtors, and homestead exemptions. The immunity from the claims of creditors of the property described in the several deeds of trust here involved must be found in the instruments themselves and not in the Act of 1832, Code section 10353. There are too many titles to property resting upon trust agreements for us to hold that the

Legislature may enact retrospective and retroactive statutes which vitally affect their security. We therefore hold that the defendants have vested interests in the property involved in this controversy, that Section 10353 is not an exemption statute, and that Chapter 108, Public Acts of 1943, is invalid insofar as it is retrospective in character, the same being in violation of the due process clause of the Constitution, as well as Article 1, section 10, of the Contsitution of the United States prohibiting the enactment of statutes impairing the obligation of contracts. The decree of the learned Chancellor is reversed and complainant's bill dismissed.