**In re Ross EVANS, Debtor.**

**G. Rhea BUCY, Trustee, Plaintiff,**

v.

**Ross EVANS, Defendant.**

**Bankruptcy No. 385–04092.**
**Adv. No. 387–0118.**

United States Bankruptcy Court,
M.D. Tennessee.

Aug. 5, 1988.

Wallace Dietz, Bass, Berry & Sims, Nashville, Tenn., for defendant.

Linda Knight, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for plaintiff.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The question presented is whether the Chapter 7 trustee can use the "strong arm" power in § 544(a)(2) to penetrate a spendthrift trust where Tennessee law would permit the State of Tennessee as a (hypothetical) unsatisfied creditor to reach assets of the trust. The trustee cannot use § 544(a)(2) to assert the special status of the State.

This is a core proceeding. 28 U.S.C. § 157(b)(2)(A), (O). The following are findings of fact and conclusions of law. Bankr.R. 7052.

### I.

In 1953, the debtor's father and uncle settled the "Clarendon Properties Trust," naming the debtor beneficiary with the right to trust income. At his death all assets of the trust are to be distributed to the debtor's children.

The debtor filed Chapter 7, and the bankruptcy trustee brought this complaint to capture the trust. The debtor defends that the trust is of the spendthrift variety and is beyond the trustee's reach. The parties disagree whether the formalities of Tennessee law were followed for creation of a spendthrift trust and whether subsequent actions by the debtor or by the bankruptcy trustee affect the validity of the trust.

On the debtor's motion for partial summary judgment, the trustee argues that the State of Tennessee as a hypothetical creditor with an execution returned unsatisfied could invade the debtor's trust, therefore, the bankruptcy trustee can "strong arm" the trust with § 544(a)(2).

### II.

The bankruptcy estate includes "all legal or equitable interests of the debtor in prop-

erty as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(a)(1) is broad and expands estate property beyond the transferability and leviability concepts of the Bankruptcy Act of 1938. *United States v. Whiting Pools,* 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). *See* H.R.REP. NO. 595, 95th Cong., 1st Sess. at 367–68 (1977) (all interests of debtor included in estate); S.REP. NO. 989, 95th Cong., 2d Sess. at 82 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323 ("The scope of this paragraph is broad. It includes all kinds of property including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act.").

Some legal and equitable interests of the debtor do not become property of the bankruptcy estate. These excluded interests are described in §§ 541(b), (c)(2) and (d). Section 541(c)(2) provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title."

Characterized by prohibitions against using trust income or corpus to satisfy creditors of the beneficiary, spendthrift trusts are "restrictions on the transfer of beneficial interests of debtors in a trust" protected in bankruptcy by § 541(c)(2). *In re Daniel,* 771 F.2d 1352, 1360 (9th Cir.1985); *McLean v. Central State, Southeast and Southwest Areas Pension Fund,* 762 F.2d 1204, 1206 (4th Cir.1985) (interests subject to enforceable transfer restrictions are not estate property); *In re Lichsterahl,* 750 F.2d 1488, 1489–90 (11th Cir.1985); *In re Reagan,* 741 F.2d 95, 97 (5th Cir.1984) ("spendthrift" restrictions are protected); *In re Graham,* 726 F.2d 1268, 1272 (8th Cir.1984) (§ 541(c)(2) preserves spendthrift trusts); *In re Goff,* 706 F.2d 574 (5th Cir. 1983); *In re Ridenour,* 45 B.R. 72 (E.D. Tenn.1984). *See* H.R.REP. NO. 595, 95th Cong., 1st Sess. at 369 (1977), U.S.Code Cong. & Admin.News 1978, p. 6325 ("Paragraph (2) of subsection (c), however, preserves restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable non-

bankruptcy law."); *Id.* at 176, U.S.Code Cong. & Admin.News 1978, p. 6136 ("The bill ... continues over [from Act] the exclusion from the estate of the debtor's interest in a spendthrift trust to the extent the trust is protected from creditors under applicable state law.").

The bankruptcy estate also contains "any interest in property that the trustee recovers under section ... 550...." 11 U.S.C. § 541(a)(3). Section 550(a) provides:

> Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property....

Tracing § 541(a)(3) through § 550 to § 544, the bankruptcy estate includes interests recovered under § 550, which includes property recovered pursuant to the "strong arm" powers in § 544(a).

Section 541(a)(3) states no limitation like the protection of spendthrift trusts in § 541(c)(2). Section 541(a)(3) potentially gathers into the estate property excluded by § 541(c)(2) if the property is recoverable by the trustee with a power listed in § 550. The trustee relies on § 544(a)(2):

> The trustee shall have, as of the commencement of the case, ... the rights and powers of ...
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.

The trustee reasons that if a creditor with an execution returned unsatisfied could invade the debtor's trust, then the trustee can exercise that power under §§ 544, 550 and 541(a)(3).

■ The rights of a creditor with an execution returned unsatisfied are determined by state law. *McAllester v. Aldridge (In re Anderson),* 30 B.R. 995, 1000 (M.D.Tenn.1983). *See* H.R.DOC. NO. 137, 93d Cong., 1st Sess. pt. 1 at 194 (1973)

("Some reference to state law is still necessary to determine what is property of the debtor, in the absence of a federal law of property.").

## III.

■ Spendthrift trusts are valid in Tennessee by statute but through a quirk of history can be invaded by the State as a creditor of the beneficiary.

In 1831, the Tennessee General Assembly abolished imprisonment for debt, leaving creditors without remedy at law if an execution returned unsatisfied. Creditors sought relief from the equity courts but it was uncertain whether equity had jurisdiction to levy on equitable interests in satisfaction of debt. *See Brooks v. Raynolds*, 59 F. 923, 939 (6th Cir.1893); *McKeldin v. Gouldy*, 91 Tenn. 677, 20 S.W. 231 (1892). *See also* Malone, T.H., "Distinctive Features of the Tennessee Law of Trusts," 16 TENN.L.REV. 33 (1939); *Comment*, "Spendthrift Trusts in Tennessee," 35 TENN.L.REV. 319 (1978).

In 1832, the General Assembly amended the "1831 Act" to grant equity courts jurisdiction to levy on equitable property interests, excluding the assets of certain kinds of trusts. Presently codified at TENN. CODE ANN. § 26–4–101(a), the "1832 Amendment," states:

> The creditor whose execution has been returned unsatisfied, in whole or in part, may file a bill in the chancery court against the defendant in the execution, and any other person or corporation, to compel the discovery of any property, including stocks, choses in action or money due to such defendant, or held in trust for him, *except when the trust has been created by, or the property so held has proceeded from some person other than the defendant himself, and the trust is declared by will duly recorded or deed duly registered.*

(emphasis added).

Specific spendthrift restrictions are not required to bring a trust within the safe harbor of the "1832 Amendment"—all trusts meeting the appropriate formalities are functionally "spendthrift trusts" in Tennessee. *White v. O'Bryan*, 148 Tenn. 18, 251 S.W. 785, 791 (1923); *First Nat'l Bank v. Nashville Trust Co.*, 62 S.W. 392, 402 (Tenn.App.1901); *Porter v. Lee*, 88 Tenn. 782, 14 S.W. 218, 220 (1890); *Henson v. Wright*, 88 Tenn. 501, 12 S.W. 1035 (1890).

In 1943 the General Assembly amended the "1832 Amendment" to authorize the State of Tennessee to levy on the corpus of a spendthrift trust when the State is a judgment creditor with an execution returned unsatisfied. The 1943 legislation was part of Tennessee's effort to collect a $4,000,000 judgment from a defendant whose only assets were in trusts protected by the 1832 Amendment. *State v. Caldwell*, 181 Tenn. 74, 178 S.W.2d 624 (1944).[1]

---

1. In 1917, Rogers Caldwell, the son of a shrewd Nashville entrepreneur, founded Caldwell and Company, "for the purpose of dealing in, buying and selling securities, stocks and bonds."

During the 1920's Caldwell and Company created or acquired 50 or so inter-dependent enterprises including insurance companies, baseball teams and banks. By 1930, the assets of Caldwell and Company were mainly overvalued stock and real estate indirectly owned by the company.

In the late 1920's, Caldwell and Company underwrote a bond issue for the State of Tennessee. The transaction required the State to deposit $3,418,000 in the Bank of Tennessee, a bank controlled by Caldwell and Company, with Rogers Caldwell as surety.

When the Bank of Tennessee failed, the Caldwell empire collapsed. In 1938, the state recovered a judgment for $4,354,702 against Rogers Caldwell as surety for the bond issue. The only asset available to satisfy the judgment was Caldwell's home "Brentwood," but it was in a trust protected by the 1832 Amendment.

The State attacked Caldwell's trust with legislation and through the courts. The General Assembly enacted the 1943 Amendment, but the Tennessee Supreme Court refused to apply the law retroactively. *State v. Caldwell*, 181 Tenn. 74, 178 S.W.2d 624 (1944). The State eventually succeeded in court, attaching a lien to Brentwood based on partial invalidity of the trust.

In 1948, the State bought Brentwood at auction for $150,000, though the Caldwells remained on the property until 1957. The $4,000,000 judgment was never satisfied. By 1968 when Rogers Caldwell died, principal and interest on the judgment totalled $20,000,000. *See* McFerrin, J.B., *Caldwell and Company* (1969); *State v. Caldwell*, 181 Tenn. 74, 178 S.W.2d 624 (1944).

This statutory exception to the usual protection of spendthrift trusts reads:

> Where the State of Tennessee shall be such a judgment creditor, the Chancery Court shall have jurisdiction to subject such property to the satisfaction of the claims of the state, despite the fact that the trust has been created or the property so held has proceeded from some person other than the defendant himself and the trust declared by will duly recorded or deed duly registered.

TENN.CODE ANN. § 26–4–101(b).

## IV.

The scant case law has repelled efforts by bankruptcy trustees to invade spendthrift trusts. On various theories, trustees have been forbidden to exercise rights against spendthrift trusts that are reserved by state law to unique or preferred classes of creditors.

One hundred thirteen years ago, the United States Supreme Court explained the policies served by protecting spendthrift trusts from bankruptcy encroachments. In *Nichols v. Eaton*, 91 U.S. 716, 23 L.Ed. 254 (1875), the terms of a trust forfeited the beneficiary's right to income upon bankruptcy. The assignee in bankruptcy of the beneficiary argued that the trust was void because it defeated the legitimate claims of the beneficiary's creditors. The Supreme Court disagreed declaring that the settlor of the trust could dispose of property as he wished, even with the condition that the right to income vaporize at bankruptcy. The Court reasoned that spendthrift trusts do not deprive creditors of their reasonable expectations: In a jurisdiction where all instruments creating trusts must be recorded to be effective, no creditor could be ignorant that some of the debtor's property was "non-foreclosable." *Id.* at 726. Finding no sabotage of creditor expectations under a spendthrift trust, the Supreme Court expressed no special concern for creditors in the beneficiary's bankruptcy. *Id.*

The United States Court of Appeals for this Circuit has consistently protected spendthrift trusts in bankruptcy. Citing *Nichols v. Eaton* for the proposition that the settlor of a trust may condition the gift on freedom from creditors' claims, in *Brooks v. Raynolds*, 59 F. 923 (6th Cir. 1893), the Sixth Circuit rejected creditors' arguments that income from an Ohio trust for the benefit of the debtor "and his family" could be recovered by the trustee in bankruptcy. In *Earthman v. Nicks (In re Matter of Nicks)*, 366 F.2d 754, 756 (6th Cir.1966), the Sixth Circuit applied Tennessee law to determine that because the beneficiary of a spendthrift trust has no interest in trust corpus, the bankruptcy estate of the beneficiary does not include trust property: "The trustee in bankruptcy can succeed only to the rights of the bankrupt." *Id.* at 756. *See Nichols v. Levy*, 72 U.S. (5 Wall.) 433, 18 L.Ed. 596 (1867) (upholding Tennessee Supreme Court's determination that a spendthrift trust was valid under Tennessee law and not subject to levy by a bankrupt's creditors).

In *In re Cypert*, 68 B.R. 449 (Bankr.N.D. Tex.1987) the trustee argued that spendthrift restrictions were not enforceable because state law permitted certain creditors to force distribution of trust assets—the beneficiary for necessaries; "necessaries creditors" for goods and services provided; and, the IRS for taxes. The court held the bankruptcy trustee could not exercise the rights of specific creditors, "The fact that certain creditors may have a claim against the trust property does not enlarge the rights of the bankruptcy trustee." *Id.*, 68 B.R. at 451. Citing *Gross v. Russo (In re Russo)*, 18 B.R. 257 (Bankr.E.D.N.Y.1982), for the proposition that the trustee has fiduciary duties to represent *all* creditors, the court concluded the trustee may neither defend nor succeed to the rights of a unique creditor.

The bankruptcy court in *Togut v. Hecht (In re Hecht)*, 54 B.R. 379 (Bankr.S.D.N.Y. 1985), held spendthrift trust income was not protected by Maryland law, but the court first found trust corpus was not estate property notwithstanding that invasion of the corpus was allowed for alimony, child support, and tax claims. *Id.* at n. 3. The court noted, "Maryland law generally recognizes the validity of spendthrift provi-

sions and will prevent creditors from reaching funds held in trust for the debtor." *Id.* at 383. *See also McCracken v. Manufacturers Hanover Trust Co. (In re Vogel),* 16 B.R. 670 (Bankr.S.D.Fla.1981) (trust funds in excess of "reasonable requirements of judgment debtor and dependents" are available to creditors under New York law).

In *Leuschner v. First Western Bank and Trust Co.,* 261 F.2d 705 (9th Cir.1958), the United States Court of Appeals for the Ninth Circuit validated the right of the federal government to collect taxes from assets protected by state spendthrift trust law, but refused to upset state law restrictions applicable to other creditors. The Ninth Circuit held that the IRS could reach the assets of spendthrift trusts, but affirmed the holding of the referee that the trustee in bankruptcy could not. *Id.* at 708.

## V.

The legislative history of § 541(c)(2) demonstrates that Congress intended to protect spendthrift trusts. Under the Bankruptcy Act of 1938, spendthrift trusts did not become estate property because state laws typically prohibited alienation by the beneficiary. In 1973, the Commission appointed to study bankruptcy in the United States recommended exclusion of spendthrift trusts from the estate only to the extent necessary to reasonably support the debtor and the debtor's dependents. The Commission's Report stated:

> There is no justification for permitting a debtor to take advantage of the Bankruptcy Act and, at the same time, to shield from his creditors assets because local law does not allow creditors to reach his interest. The Commission generally recommends that these restraints not be enforceable. However, in recognition of the possibility that the spendthrift trust may be used to protect one incapable of providing for his own welfare, the debtor should be allowed to retain sufficient income to support himself and his dependents. But to the extent that the beneficial interest is of a value in excess of the reasonable support needs of the

debtor and his dependents, the interest should be available to the debtor's creditors.

H.R.DOC. NO. 137, 93d Cong., pt. I at 192–93 (1973). *See also* S.REP. NO. 989, 95th Cong., 2d Sess. at 83 (1978).

The Senate version of the 1978 Code agreed with the Commission and limited protection of spendthrift trusts. S.REP. NO. 989, 95th Cong., 2d Sess. at 83 (1978). The House rejected the Commission's recommendation and preserved spendthrift trusts to the full extent enforceable under non-bankruptcy law. H.R.REP. NO. 595, 95th Cong., 1st Sess. at 369 (1977). The House position prevailed. Section 541(c)(2) was enacted on the rationale that "[t]he bankruptcy of the beneficiary should not be permitted to defeat the legitimate expectations of the settlor of the trust." H.R. REP. NO. 595, 95th Cong., 1st Sess. at 176 (1977), U.S.Code Cong. & Admin.News 1978, p. 6136.

## VI.

Sections 544(a)(2) and 541(c)(2) are harmonized by declining the trustee's provocative argument that the strong arm power can be used to defeat a Tennessee spendthrift trust.

Section 544(a)(2) transmits to the bankruptcy trustee without enhancement the powers of an unsatisfied creditor under state law. General creditors under Tennessee law have no non-bankruptcy entitlement to assets of a trust protected by the 1832 Amendment. No general creditor can claim an expectation that assets of a spendthrift trust become available in the bankruptcy of the beneficiary. No decision has been found allowing a trustee in bankruptcy to hypothesize a unique creditor with powers to invade a spendthrift trust.

Prior to enactment of the 1978 Code, Congress studied spendthrift trusts in bankruptcy and determined not to upset the established protections. The trustee's argument would destroy spendthrift trusts as they have been known in Tennessee since 1832. An involuntary bankruptcy petition against the beneficiary of any Tennessee spendthrift trust would explode the

trust. The demise of spendthrift protection should rest on a clear statement of legislative intent.

An appropriate order will be entered.

## ORDER

For the reasons stated in the memorandum filed contemporaneously herewith, IT IS ORDERED, ADJUDGED and DECREED that the Chapter 7 trustee cannot use § 544(a)(2) to assert the unique status of the State of Tennessee as a hypothetical judgment creditor with an execution returned unsatisfied. On this issue, the defendant's motion for partial summary judgment is granted.

IT IS SO ORDERED.