### In re Daniel FINLEY and Karen Finley, Debtor.

**Russell D. Garrett, Chapter 7 Trustee for the bankruptcy estate of Daniel Finley and Karen Finley, Plaintiff,**

v.

**Daniel Patrick Finley; and Jerry Croskrey, as Trustee of Constance L. Nesbit Living Trust (Tax ID No. 91–6441309), Defendant.**

Bankruptcy No. 00–32988.
Adversary No. A02–4073.

United States Bankruptcy Court,
W.D. Washington.

Dec. 4, 2002.

**164**

Timothy J. Dack, Vancouver, WA, for Debtors.

Bullivant Houser Bailey, Seattle, WA, for Russell D. Garrett.

Russell D. Garrett, Vancouver, WA, trustee.

## MEMORANDUM DECISION

PAUL B. SNYDER, Bankruptcy Judge.

This matter came before the Court on stipulation by the parties for a ruling on the issue of the Chapter 7 Trustee's (Trustee) ability to reach property held by a spendthrift trust. A hearing was held in this matter on October 9, 2002. Taking into consideration the pleadings and arguments presented, the Court's findings of fact and conclusions of law are as follows:

## FINDINGS OF FACT

The parties have stipulated to the following facts:

On May 29, 1997, Constance L. Nesbitt, created the Constance L. Nesbitt Living Trust (Living Trust). Her spouse, Jerry Croskrey, is the designated trustee of the Living Trust. On or about May 29, 1997, Constance L. Nesbitt created the Constance L. Nesbitt Irrevocable Trust Agreement (Irrevocable Trust), also designating Jerry Croskrey as trustee. The beneficiaries of the Irrevocable Trust are Constance L. Nesbitt's natural children, Christopher J. Finley and Daniel P. Finley (Debtor).

On or about June 2, 1997, Constance L. Nesbitt executed her Last Will and Testament (Will). Jerry Croskrey was designated her personal representative under the terms of such Will. Constance L. Nesbitt funded the Living Trust from time to

time. Constance L. Nesbitt died on January 10, 1998. She is survived by her spouse, Jerry Croskrey (Croskrey), and her children, Christopher J. Finley and Daniel P. Finley. Constance L. Nesbitt's Will was filed with the clerk of Clark County, State of Washington, on February 13, 1998. Neither of the parties are aware of any property subject to direct distribution to the Debtor pursuant to the Will.

As a consequence of the death of Constance L. Nesbitt, and by operation of the above described trust agreements, a substantial estate was created of which the Debtor and his brother are beneficiaries in equal shares. Distribution rights are outlined in the Irrevocable Trust.

Croskrey is required to separately administer the beneficial interests of the Debtor and his brother pursuant to the terms of the Irrevocable Trust. A final distribution from the trust estate to each beneficial interest is mandated by a calendar formula for distribution set forth in the Irrevocable Trust. Generally, such mandatory distribution shall commence on the 44th birthday of a beneficiary and be distributable in shares representing 1/20th of the net estate commencing on December 31, following such birthday, with a proportionate distribution on December 31 of each following successive year for a period of 20 years, completing the installment distribution of all trust property to the beneficiary.

The Irrevocable Trust contains a provision that limits the recourse of a beneficiary's creditor as outlined in the Irrevocable Trust. According to Article 4, paragraph 4.5, of the Irrevocable Trust:

No share or interest of a beneficiary shall be liable for his or her debts or be subject to the process or seizure of any court or be an asset in bankruptcy of any beneficiary. No beneficiary hereunder shall have power to anticipate, alienate or encumber his or her interest in the Trust Estate or in the income therefrom. If by reason of a bankruptcy, judgment or any other cause, any income or principal would, except for this provision, vest in or be enjoyed by any person other than the beneficiary intended by the terms of this agreement, then such principal or income shall not be distributed but shall be withheld by the TRUSTEE during the life of such beneficiary or any shorter period or periods in the absolute discretion of the TRUSTEE.

The parties do not agree on the interpretation of the above provision.

The Debtor filed a voluntary Chapter 7 petition on April 11, 2000. As of the date of filing, and for a period of approximately six years thereafter, the Debtor is not entitled to mandatory distribution from the Irrevocable Trust.

The Chapter 7 Trustee has made demand upon Croskrey to surrender the property that represents the entire beneficial interest of the Debtor in the trust estate. Croskrey has refused to surrender such property.

None of the trust estate property in which the Debtor holds a beneficial interest was deposited in such Irrevocable Trust by the Debtor. All property in the trust estate consists of property owned solely by Constance L. Nesbitt during her life and deposited in the Irrevocable Trust by her prior to or upon her death, or is the proceeds of such deposited property.

## CONCLUSIONS OF LAW

The Debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). There are exceptions, however, to this rule. 11 U.S.C. § 541(c)(2) provides "[a]

restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Accordingly, spendthrift trusts may be excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2).

The parties do not dispute that the Irrevocable Trust at issue in this case is a valid spendthrift trust under the law of the State of Washington.[1] The issue that remains is the extent to which the Trustee may invade the spendthrift trust, if at all, for the benefit of a specific class of creditors.

■■■ Federal law provides the bankruptcy trustee with the rights of an unsecured creditor, but the extent of a trustee's rights are determined by state law. 5 L. King, *Collier on Bankruptcy*, ¶ 544.09[2], p. 544–18 (15th ed. Rev.2000). Under Washington law, where a valid spendthrift trust exists, only the portion of the trust that has accrued and is ready for distribution to the beneficiary is subject to seizure. *Knettle v. Knettle*, 197 Wash. 225, 227–28, 84 P.2d 996, 997 (1938). This rule is contrary to the rule in the majority of jurisdictions that does not permit a creditor to reach a beneficiary's interest until it is actually paid to the beneficiary. *In re Pettit*, 61 B.R. 341, 346 (Bankr.W.D.Wash. 1986). In the instant case, the parties agree that no portion of the trust has accrued and is ready for distribution to the beneficiaries. No portion of the trust, therefore, is subject to the claims of general creditors.

■■■ An exception to this rule, however, exists under Washington law for creditors who supplied a beneficiary of a spendthrift trust necessary services or supplies. *Erickson v. Bank of California*, 97 Wash.2d 246, 253, 643 P.2d 670, 674 (1982). Relying on *Erickson*, the Trustee argues that he can step into the shoes of a hypothetical creditor that provided necessities and seize sufficient Irrevocable Trust assets to pay all allowed claims.

According to 11 U.S.C. § 544(a)(1), the trustee shall have, as of the commencement of the case, the rights and powers of:

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists[.]

In *Erickson*, the bankruptcy trustee sued the trustee of a spendthrift trust in Washington State King County Superior Court seeking to seize the debtor's interest in the assets of the trust. The Washington State Supreme Court (Washington Supreme Court) determined that a bankruptcy trustee may invade the spendthrift trust in the place of only creditors who furnished necessities. The Washington Supreme Court based its decision on the fact that under former Section 70(c) of the Bankruptcy Act[2], a bankruptcy trustee can step into the shoes of a hypothetical lien creditor. *Erickson*, 97 Wash.2d at 252, 643 P.2d 670. Since under Washington law the interest of a beneficiary in a spendthrift trust may be reached by a

---

**1.** Although there was originally an issue as to whether the Irrevocable Trust was funded at the time of the grantor's death, the parties' indicated at the October 9, 2002 hearing that it is now undisputed that the Irrevocable Trust was properly funded.

**2.** Former Section 70(c) has since been replaced by 11 U.S.C. § 544(a). Although the language of the two sections is not identical, no substantive changes were made that would effect this decision.

creditor who furnished "necessities," the Washington Supreme Court determined that a bankruptcy trustee may step into such a creditor's shoes under the "strong arm" provisions of former Section 70(c). The Washington Supreme Court remanded the matter for a bankruptcy court determination of what "necessities" were provided to the debtor.

■ The parties recognize the difficulty of applying the *Erickson* holding to a bankruptcy case. In remanding the case for a determination of what "necessities" were provided, the Washington Supreme Court continued on to state that if the goods purchased were necessities, and the amounts paid reasonable, "such purchases shall be paid from assets of the spendthrift trust." *Erickson,* 97 Wash.2d at 254, 643 P.2d 670. The Washington Supreme Court clearly contemplated that the bankruptcy trustee would collect and distribute trust assets to the provider of the "necessities." However, neither the Bankruptcy Code (Code) nor the Bankruptcy Rules [3] permit a discriminatory distribution of property to a unique class of claims. The Code is instead premised on a system of pro rata distribution to similarly situated allowed claim holders. Accordingly, there is no mechanism under the Code for applying the *Erickson* holding on remand for distributing the assets of a spendthrift trust to only those creditors who provided "necessities." Based on this apparent inconsistency between the application of federal and state law in distributing assets from a spendthrift trust, the parties framed the issue before this Court as to whether the Trustee's recovery is limited by the amount of claims filed for "necessities," or whether the Trustee's recovery should be the amount required to satisfy all allowed claims in order to comply with

the pro rata distribution scheme envisioned by the Code.

Relying on *Erickson,* the Trustee argues that as a hypothetical lien creditor, he should be able to invade the trust corpus to satisfy all claims, not just claims for necessities. Although such a holding would be clearly at odds with the Washington Supreme Court's direction to the bankruptcy trustee in *Erickson,* the argument does have some merit. As recognized by the Washington Supreme Court, former Section 70(c) allows a bankruptcy trustee to step into the shoes of a hypothetical, as compared to actual, creditor for "necessities," whether or not such a creditor actually exists. *Erickson,* 97 Wash.2d at 253, 643 P.2d 670. Presumably a creditor for "necessities" could exist for a claim as great as or in excess of the amount of the beneficiary's interest in the trust assets. The Trustee argues that since he is a hypothetical creditor, as opposed to an actual creditor, why should he be limited to the amount of actual claims for necessities? In addition, the Trustee asserts that the intent of the Washington Supreme Court was clearly to ensure that to the extent sufficient funds existed, all claims for necessities would be paid. Since there is no mechanism under the Code to prefer such claims over other unsecured allowed claims that are similarly situated, the only way to ensure full payment of these claims for necessities is to pay all similarly situated allowed unsecured claims in full.

It is difficult to reconcile 11 U.S.C. § 544(a) with 11 U.S.C. § 541(c)(2) in this situation. The language of 11 U.S.C. § 544(a) is broad and appears to allow the Trustee the exact authority he is seeking. It is not appropriate, however, to read this section in isolation. Rather, this Court

**3.** References to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330, and the Federal Rules of Bankruptcy Procedure Rules are to 1001–9036.

has a responsibility to attempt to reconcile 11 U.S.C. § 541(c)(2) and 11 U.S.C. § 544(a), to render a decision that gives both sections meaning. The Court concludes that the Trustee is correct that creditors furnishing necessities may invade the assets of a spendthrift trust. This Court, however, respectfully disagrees that a bankruptcy trustee may step into the shoes of such a creditor for necessities through the strong arm provisions of 11 U.S.C. § 544(a) to seize a spendthrift trust's assets.

The issue of whether a bankruptcy trustee may reach the assets of a spendthrift trust is not without precedent. This Court is aware of several bankruptcy court decisions in which this issue was raised. In each of these cases, the courts concluded that a valid spendthrift trust could not be reached by a bankruptcy trustee under similar circumstances. *See, e.g., In re Katz*, 220 B.R. 556, 565–66 (Bankr.E.D.Pa. 1998) (spendthrift trusts excluded entirely from bankruptcy estate and trustee cannot exercise rights reserved by state law to unique or preferred class of creditors); *In re Evans*, 88 B.R. 813, 817 (Bankr. M.D.Tenn.1988) (trustee cannot hypothesize a unique creditor to invade spendthrift trust); *In re Cypert*, 68 B.R. 449, 451 (Bankr.N.D.Tex.1987) (trustee cannot assert rights held by individual creditor for necessities to attach spendthrift trust). This Court is not aware of a bankruptcy court decision reaching the opposite result.

In each of the above-cited cases, the trustees, as did the trustee in *Erickson*, argued that because state law permitted invasion of a spendthrift trust by a limited class of creditors, the trustee should be able to invade the trust under his strong arm powers. The bankruptcy courts uniformly rejected such attempts as contravening 11 U.S.C. § 541(c)(2).

The legislative history of 11 U.S.C. § 541(c)(2) indicates strong Congressional intent to protect spendthrift trusts and to exclude these assets from the bankruptcy estate. *Evans* contains an in depth discussion of the legislative history of this section and that a report was presented to Congress in 1973 by the commission appointed to study bankruptcy in the United States. The commission recommended that spendthrift trusts be excluded from the bankruptcy estate only to the extent necessary to reasonably support the debtor and the debtor's dependents. *Evans*, 88 B.R. at 817. The House rejected the commission's recommendation and preserved spendthrift trusts to the full extent enforceable under nonbankruptcy law. *Evans*, 88 B.R. at 817 (citing H.R. REP. No. 595, 95th Cong., at 176 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6136).

The intent of a trustor in establishing a spendthrift trust, even if the trust language provided that the income of the trust would disappear on a beneficiary filing bankruptcy, has a long judicial history of being protected. In *Nichols v. Eaton*, 91 U.S. 716, 23 L.Ed. 254, (1875), which was decided prior to enactment of the modern bankruptcy code, the United States Supreme Court explained the rationale behind protecting such trusts in bankruptcy. In *Nichols*, the bankrupt's assignee attempted to reach the bankrupt's interest in a trust for the benefit of creditors. The trust at issue contained a provision providing that the interest of a beneficiary would cease if the beneficiary alienated his interest in the trust. The assignee argued that such provisions should be void in bankruptcy as against public policy because they defeat the claims of legitimate creditors. The Supreme Court disagreed reasoning that since states have enacted laws exempting such assets from seizure, creditors should be aware of the fact that they have no right to look to such

assets for payment. Extending those protections in bankruptcy therefore respects state law and a settlor's intentions, without depriving creditors of their reasonable expectations. *Nichols,* 91 U.S. at 726.

11 U.S.C. § 544(a) grants a trustee, without enhancement, the rights of a hypothetical creditor under state law. Under Washington state law, general creditors have no ability to invade the assets of a spendthrift trust. Only for "necessities" may a spendthrift trust be invaded. General creditors therefore have no reasonable expectation of payment. Accordingly, concluding that a bankruptcy trustee may invade a spendthrift trust for the benefit of a unique class of creditors to pay all similarly situated unsecured creditors, renders 11 U.S.C. § 541(c)(2) meaningless in a situation where no such creditor expectations could legitimately exist.

A ruling by this Court that a bankruptcy trustee cannot invade a valid spendthrift trust under these circumstances is also consistent with Ninth Circuit case law. For example, in *In re Fitzsimmons,* 896 F.2d 373 (9th Cir.1990), a bankruptcy trustee filed an action to determine the estate's interest in certain trust assets. The bankruptcy trustee argued that she could invade the assets pursuant to 11 U.S.C. § 544(a)(2), because she could step into the shoes of the United States who had a tax lien claim. The Ninth Circuit, however, ruled against the bankruptcy trustee, following the *Cypert* decision that had rejected the right of the bankruptcy trustee to invade a spendthrift trust for necessities. The appellate court held that the fact that specific creditors may have a claim against the trust property does not enlarge the rights of the bankruptcy trustee to use the "strong arm" provisions of 11

U.S.C. § 544(a). *Fitzsimmons,* 896 F.2d at 376–77.[4] Applying the principles of *Nichols,* the Ninth Circuit also stated that bankruptcy law should respect a trustor's establishment of a trust so long as that trust does not sabotage creditor expectations. *Fitzsimmons,* 896 F.2d at 377 n. 3.

This Court's decision is also consistent with *In re Neuton,* 922 F.2d 1379 (9th Cir.1990). The trust at issue in *Neuton* was governed by California law. The California Probate Code contains a provision, under which spendthrift restrictions fully protect only 75% of a beneficiary's interest in a trust. Cal. Prob.Code § 15306.5. The Ninth Circuit concluded that the bankruptcy trustee could reach 25% of the beneficiary's interest under 11 U.S.C. § 544(a)(1), as that portion of the trust was available to claims of general creditors. *Neuton,* 922 F.2d at 1383. The Ninth Circuit made it clear that the reason that the trustee could seize the assets under 11 U.S.C. § 544(a)(1) was only because California law removed 25% of the debtor's interest from traditional spendthrift protections and left it in the estate. *Neuton,* 922 F.2d at 1383. Unlike a portion of the trust in *Neuton,* the trust in the instant case is entirely excluded from the estate under 11 U.S.C. § 541(c)(2). *Neuton* is also distinguishable in that California law removed 25% of the assets for the benefit of general creditors, not some unique class. General creditors therefore had an expectation of payment from these assets. It therefore was consistent with the rationale of *Nichols* and other cases cited above, to allow a bankruptcy trustee to recover those assets for the benefit of general creditors.

This Court acknowledges that it is bound by the Washington Supreme

---

4. Although *Fitzsimmons* involved a forfeiture-on-alienation of a life interest rather than a spendthrift trust, the *Fitzsimmons* court did not find that distinction significant to its analysis. *Fitzsimmons,* 896 F.2d at 377 n. 3.

Court's rulings regarding the validity of spendthrift trusts and the ability of a creditor to reach the trust's assets. However, this Court is not bound by a state court decision interpreting the bankruptcy code. The rights of a trustee under 11 U.S.C. § 544(a) is a federal question and relates to a core bankruptcy proceeding under 28 U.S.C. § 157(b)(1). The *Erickson* court acknowledged this fact when it stated:

> While the issue of whether the trustee is entitled to such a status is a federal question to be answered under the Bankruptcy Act, the extent of the trustee's rights, remedies and powers as a lien creditor are measured by the substantive law of the jurisdiction governing the property in question.

*Erickson*, 97 Wash.2d at 251–52, 643 P.2d 670.

The Washington Supreme Court's direction to the bankruptcy trustee in *Erickson* to determine whether the goods purchased by the debtor were necessities, and if reasonable, to pay these creditors from the assets of the spendthrift trust, misinterpreted the bankruptcy trustee's ability to invade a spendthrift trust for a specific class of creditors under 11 U.S.C. § 544(a). It would be difficult for this Court to literally apply the *Erickson* holding, even if it determined it were bound, as it is inconsistent with the pro rata distribution scheme for similarly situated allowed claims created by the Code.

In attempting to reconcile *Erickson* with the Code, the parties presented the Court with several alternative resolutions. The Trustee's proposal, which would allow him to seize the trust assets and pay all unsecured claims in full, appears to comply with the literal language of 11 U.S.C. § 544(a), but renders 11 U.S.C. § 541(c)(2) meaningless. Croskrey's proposed solution of allowing the Trustee to invade for allowable claims for necessities and then distributing this amount to all unsecured creditors pro rata, does not comply with the Washington Supreme Court's direction in *Erickson* on remand. Further, it conflicts with 11 U.S.C. § 541(c)(2), the purpose which is to respect state spendthrift laws in bankruptcy, and protect a settlor's intent.

This Court recognizes that a narrow exception has been created under state law for providers of "necessities." The rationale for this exception is that because the purpose of a spendthrift trust is to provide the beneficiary with living expenses, and because necessities can be equated with such expenses, a party who provided necessities should be able to seek reimbursement from that fund. *Erickson*, 97 Wash.2d at 251, 643 P.2d 670. If this Court was to agree with Croskrey, neither the settlor's intent nor the rationale behind this exception would be served. The Court recognizes that the expectancy of this narrow class of creditors providing necessities is not met by this decision. The Court concludes however, that the Trustee cannot step into the shoes of a special or unique class of creditors to reach the assets of a spendthrift trust.